No. 41,229

In the Matter of the Estate of Zelda Lytle, Deceased. HELEN MADDY, GILBERT LYTLE, MAXINE CROCKETT, SADIE LYTLE, GENEVIEVE ROZEANE, LOUISE BAUMGARNER, JACQUELYN SAUDERS, ROSE BAIR, M. A. LYTLE, MAE GREEN, MAUDE GRAVES, JOE LYTLE, FRANK LYTLE, ALICE BARTON, *Appellants*, v. JOHN McCORMICK, Administrator of the Estate of Zelda Lytle, deceased; WILLIAM A. CAPPS, *Appellees.*

(336 P. 2d 808)

Opinion filed March 7, 1959.

*Stanley Krysl,* of Stockton, argued the cause, and *D. A. Hindman,* of Stockton, was with him on the briefs for the appellants.

*W. McCaslin,* of Stockton, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This appeal arises out of an attempt to enforce a purported claim against a decedent's estate. Claimants have appealed from an adverse ruling.

Edwin G. Lytle and Zelda Lytle, husband and wife, were residents of Rooks county, and we are told that each was suffering from an incurable disease.

Edwin died intestate on November 28, 1956, and was survived by Zelda as his sole heir-at-law.

Ten days later, on December 8, 1956, Zelda died intestate.

John McCormick was appointed administrator of the estate of each.

This appeal, however, is concerned only with Zelda's estate.

The period within which a claim could be filed against her estate under the nonclaim statute (G. S. 1949, 59-2239) expired on September 20, 1957.

On August 31, 1957, fourteen collateral heirs of Edwin (hereafter referred to as claimants) filed in Zelda's estate a "PETITION FOR ALLOWANCE OF DEMAND STRIKING ITEMS OF PROPERTY FROM INVENTORY ON FILE," which, after reciting their relationship to Edwin and their residences, alleged:

". . . and for their claim against said estate, do hereby petition the Court for an order to Strike and delete from the Inventory filed herein, all of the Items of Real and Personal property inventoried herein, which were the property of Edwin G. Lytle at his death, as inventoried in Case No. 3015, for the reason that Zelda Lytle is barred from inheriting any property from Edwin G. Lytle and his estate, and petitioners with the exception of said Zelda Lytle, are those persons entitled to inherit the same by virtue of the laws of descent and distribution of the State of Kansas, through the estate of the said Edwin G. Lytle.

"FIRST CAUSE OF ACTION

"That Zelda Lytle, who was suffering from an incurable disease, the surviving spouse of decedent, in order that she might survive decedent and thus inherit his entire estate, maliciously, designedly, willfully and deliberately withheld during the period of October 14, 1956, to November 14, 1956, proper and available medical treatment and hospitalization from decedent and thereby shortened his life to the extent that it constituted feloniously depriving him thereof. That had such treatment and hospitalization been made available and afforded to decedent, he would have survived said Zelda Lytle, who died on the 8th day of December, 1956, and petitioners would have inherited all of the property of the estate of Edwin G. Lytle, both real and personal, and it should not, therefore, be included as a part of the inventory in this estate and should be stricken therefrom.

"SECOND CAUSE OF ACTION

"That Zelda Lytle, surviving spouse of decedent, maliciously, designedly, willfully and deliberately from October 14, 1956, to November 14, 1956, withheld proper and available medical treatment and hospitalization from decedent and therby shortened his life to the extent that it constituted feloniously depriving him thereof. That said actions, having shortened decedent's life to the

extent of depriving him thereof, said Zelda Lytle is barred from inheriting any of the property of the estate of Edwin G. Lytle, either real or personal, and should not, therefore, be included as a part of the inventory in this estate and should be stricken therefrom.

"WHEREFORE, petitioners pray the court for an order striking and deleting from the inventory, filed herein, all of the items of real and personal property, inventoried therein, which were the property of Edwin G. Lytle, at his death, as inventoried as Case No. 3015 of this Court."

On December 9, 1957, the administrator filed an answer in the form of a general denial, and on the same date also filed a petition to have the matter transferred to the district court.

On December 20, 1957, the motion to transfer the claim to the district court was sustained—and such was done.

On March 3, 1958, claimants filed an "AMENDMENT TO PETITION FOR ALLOWANCE OF DEMAND," the gist of which was that claimants, through one of them, had entered into an agreement with Zelda whereby the serious nature of Edwin's illness would be concealed from him and Zelda would in turn leave all of his property, with the exception of the home and automobile, to claimants, and that claimants had complied with such agreement, but that Zelda had failed to carry out her part of the agreement.

On April 10, 1958, claimants filed a "SECOND AMENDMENT TO PETITION FOR ALLOWANCE OF DEMAND," the gist of which was that during their lifetimes Edwin and Zelda had entered into an oral property settlement contract by the terms of which Edwin was to separately own all of his property except the home and automobile; that in the event Zelda survived Edwin she was not to receive anything from his estate other than the home and automobile, and that such contract was never changed or altered by the parties.

The record as to subsequent procedural steps is confusing, but, be that as it may, the administrator's motion for judgment on the pleadings was sustained, the claim in question was denied, and, in denying permission to claimants to file the amendments of March 3rd and April 10th, the court ruled:

"This case stands on a motion of the claimants for permission to file a claim, which is designated Amendment to the Petition for Allowance of a Demand and a Supplement to that Motion.

"It is the finding of this Court that the claim is not an amendment to the original claim, but is a new claim, and that the Statute of Limitations bars the filing of a new claim.

"Therefore, the permission to file is denied."

Claimants have appealed, and, although they assert seven speci-

fications of error, the sole question raised by them pertains to the correctness of the above ruling.

Claimants contend that their original demand or claim filed in the probate court stated a cause of action and tolled the nonclaim statute; that upon the matter being transferred to the district court they had the right to amend so as to set up new theories or causes of action as a matter of right even though the nonclaim statute had run, and that the amendments in question did not constitute a new claim or claims but were a part and parcel of the over-all claim and merely set out additional theories or reasons why the relief sought should have been granted.

The administrator of Zelda's estate, on the other hand, contends that the original demand or claim, filed on August 31, 1957 (set out above), did not state a cause of action, therefore there was nothing to amend, and the court was correct in denying the attempted amendments filed long after the nonclaim statute had run.

It is readily apparent that all parties to this action, including the court, regarded the original demand or claim of August 31, 1957, as being a "claim" against Zelda's estate within the meaning of G. S. 1949, 59-2237, which provides that any person may exhibit his demand against the estate of a decedent by filing his petition for its allowance in the proper probate court.

In so construing and regarding it, we believe that all parties and the court were in error.

Stripped of excess verbiage (although it does not say so in so many words), the only conceivable basis and substance of that so-called "claim" simply amounts to this:

Edwin was in the last stages of an incurable disease. He had no will. Zelda was his sole heir-at-law. In order that she might out-live him and thus inherit all of his property, she deliberately and maliciously withheld from him proper medical treatment, thus shortening his life to the extent that she survived him—in other words, she feloniously killed him! As a result, Zelda is barred (presumably under G. S. 1949, 59-513) from inheriting any of Edwin's property and all of it belongs to claimants who, with Zelda out of the picture, are Edwin's heirs-at-law—therefore property owned by him should be stricken from the inventory of her estate.

G. S. 1949, 59-513, provides:

"No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will or otherwise from such other person any portion of his estate."

(See *In re Estate of Foster*, 182 Kan. 315, 320 P. 2d 855, for a discussion of this section and cases dealing with an earlier similar statute.)

In no sense of the word may it be said the "claim" filed on August 31, 1957, is a claim or demand against Zelda's estate within the meaning of G. S. 1949, 59-2237, above. It does not allege any indebtedness or liability on the part of Zelda running to claimants, and it does not seek to obtain anything from her estate, as such. Looking through form to substance, it amounts to nothing more than an assertion by claimants of their alleged rights to inherit, as his heirs-at-law, all of Edwin's property, resulting from the fact that Zelda is barred from inheriting because she feloniously killed him, and then seeks to strike all such property from the inventory of her estate.

Because of our view of this matter, just expressed, questions concerning whether the so-called "claim" stated a "cause of action" (because conviction of the "killing" was not alleged); the right to amend a claim (G. S. 1949, 59-2408) after the nonclaim statute (G. S. 1949, 59-2239) has run; and, considered as a "claim," whether the attempted amendments constituted a complete departure and thus a "new claim" after the statute had run—all become academic, and we therefore express no opinion thereon. Furthermore, as these claimants are in reality claiming as heirs-at-law of Edwin, and not of Zelda, the question of necessity for one claiming rights as an heir-at-law in an intestate estate to assert his rights by way of a "claim" against that estate, also is not before us.

The extent of our holding is that the petition filed by claimants on August 31, 1957, is in no sense of the word a "claim" against Zelda's estate within the meaning of G. S. 1949, 59-2237—it is, as heretofore stated, merely an assertion by them of their alleged rights to inherit, as his heirs-at-law, all of Edwin's property, and a motion to strike all of such property from the inventory of her estate. Assuming, merely for the sake of argument, that the two amendments in question could be considered as "claims" against Zelda's estate, they nevertheless were properly denied because there was no "claim" on file to amend and the nonclaim statute had long since run.

And so, even though the court erroneously regarded the petition of August 31, 1957, as a "claim" against Zelda's estate, the judgment ultimately rendered was correct, and, under the well-established rule, the reasoning leading up to the judgment becomes immaterial.

The judgment is affirmed.