No. 41,688

JOHN MCCORMICK, Administrator of the Estate of Edwin G. Lytle, deceased, et al., *Appellees,* v. HELEN MADDY, et al., *Appellants.*

(348 P. 2d 1007)

Opinion filed January 23, 1960.

*Stanley Krysl*, of Stockton, argued the cause, and *D. A. Hindman*, of Stockton, was with him on the briefs for the appellants.

*W. McCaslin*, of Stockton, argued the cause, and was on the briefs for the appellants.

The opinion of the court was delivered by

JACKSON, J.: In this appeal we deal with another installment of the dispute between the heirs of Mr. and Mrs. Edwin G. Lytle. The first installment of this dispute to reach this court will be found in *In re Estate of Lytle*, 184 Kan. 304, 336 P. 2d 803. As shown in the above mentioned opinion, Mrs. Zelda Lytle died some ten days after the death of her husband, Edwin. The first appeal concerned the attempts of the relatives or heirs of Edwin to assert rights in the estate of Zelda. The blood relatives of Edwin, the husband, are and have been contending that the deceased widow was barred from inheriting from her husband's estate. The former decision was briefly that the alleged rights of the present appellants amounted to a contention that they were heirs at law of the husband, and that such contentions did not constitute a claim in the wife's estate.

The present chapter of the controversy arises from proceedings which occurred at the time the administrator of Edwin's estate filed his petition for settlement and determination of the identity of the husband's heirs. The administrator's petition need not be further noticed. Within due time, the appellants herein filed their answer to the administrator's petition denying the right of the widow to inherit any of her husband's estate, except the homestead and personal automobile and set up an alleged postnuptial contract which they claimed barred the widow from inheriting her husband's estate. The probate court transferred the above matter to the district court for decision upon the request of all parties. In the district court the administrator obtained leave of court to file a reply in which he contended the alleged marriage contract was void and that further the demands of the appellants amounted to a claim against the estate and was barred by G. S. 1949, 59-2239, the nonclaim statute, and for other reasons.

When the within matters came on for hearing in the district court, counsel for the appellants made an opening statement, after which the administrator moved for judgment on the pleadings and opening statement "insofar as pertains to the relief prayed for in the answer filed herein by the said Helen Maddy et al."

Before this motion was ruled upon, the appellants were allowed to amend their answer by interlineation. Such amendment will be shown as part of the pertinent parts of the answer *infra*. The motion for judgment by the administrator seems to have been then renewed and was sustained by the district court. The sole question on this appeal is as to whether the trial court erred in this ruling.

There is nothing in this appeal concerning the opening statement so that the motion of the administrator really amounts to a motion for judgment on the pleadings. In considering the court's ruling we shall have to overlook all issues of fact drawn by the pleadings of the parties and assume that the allegations of the answer of the appellants are true (*Lanning v. Goldsberry,* 173 Kan. 654, syl. ¶ 2, 250 P. 2d 812 and authorities cited).

Thus the question narrows down to the sufficiency of the answer in stating appellants' claim as heirs to the estate of the intestate. The pertinent parts of the answer, with the paragraph inserted by the amendment referred to *supra* shown in italics, reads as follows:

"Answering respondents deny that the property of this estate, except the home and automobile, hereinafter described, should be distributed and assigned according to the law of descent and distribution of the State of Kansas, and state that it should be assigned as hereinafter set forth for and upon the following grounds.

"That a few months before the date of the death of Edwin G. Lytle, he and Zelda Lytle entered into an oral property settlement contract, by the terms of which Edwin G. Lytle was to own all of the property inventoried in this estate, except the home described as Lots 16, 18, 20, 22, 24 and 26 in Block 39 North of Main Street in the City of Stockton, Kansas, and a 1956 Buick automobile all of which stood of record in the name of Edwin G. Lytle, and in the event Edwin G. Lytle predeceased Zelda Lytle, she was not to receive anything from his estate other than said home and automobile, and Zelda Lytle was to separately own said home and automobile and all other property which she individually owned, and in the event she predeceased Edwin G. Lytle, he was not to receive anything from her estate which was to include said home and automobile.

"That the aforesaid contract was never changed or altered by said parties and continued and was in existence and full force and effect at the date of the death of Edwin G. Lytle.

"By virtue of the terms of said contract, respondents are the persons entitled to inherit the property of decedents estate, except the home and automobile in the proportions provided by the laws of descent and distribution of the State of Kansas, through the estate of the said Edwin G. Lytle.

"*That prior to her death, Zelda Lytle executed a written memorandum or other instrument, confirming said property settlement; which written memorandum, shortly after her death, disappeared, and is now lost, misplaced, concealed, or has been destroyed, and is not now available to respondents.*"

While it is evident that at the time the motion for judgment was first introduced by the administrator, it was the intention of the movant to urge that the statute of frauds barred appellants' claims as well as the nonclaim statute, the amendment of the answer by interlineation seems to have removed that issue from consideration at this time. The trial court seems to have based its decision solely upon the nonclaim statute and that issue is actually the single question argued upon this appeal. Furthermore, any other matter which might be urged against appellants does not appear in the answer which is challenged by the motion for judgment.

The administrator recognizes in his brief before this court that the case of *In re Estate of Welch,* 167 Kan. 97, 204 P. 2d 714, presents a serious problem in upholding the ruling from which the appeal is taken. In the Welch case, a daughter of an intestate had petitioned for the appointment of the administrator and had alleged in the petition that the intestate had been survived by his widow and the petitioning daughter. At a later date, the existence of an ante-nuptial contract was discovered, and on petition for final settlement, it was contended by the daughter that the contract barred the widow from inheriting any of the intestate's estate. The question turned upon the nonclaim statute as does the decision in the case now at bar. The Welch decision was that the matter was not a demand under the nonclaim statute. However, Mr. Justice Wedell dissented alone from the decision of the court, but under the rule of this court was compelled to write the majority opinion. In such circumstances, the concurring opinion of the now Mr. Chief Justice Parker, concurred in by all of the court with the exception of Mr. Justice Wedell, is especially pertinent in expressing the theory behind the court's decision. The concurring opinion appears on page 105 of the report and reads as follows:

"PARKER, J. (concurring): In the instant case the widow contends an ante-nuptial contract, which in effect fixes the distributive rights of the heirs of an intestate decedent when his estate is ready for final distribution, constitutes a demand against such estate provisions of the new Kansas probate code.

"This, as I read our decisions, is the first time this particular question has been squarely raised since the enactment of the new code. For that reason it is deserving of a forthright and definite answer.

"I am convinced the phrase 'all demands' as used in what is commonly known as the nonclaim statute (G. S. 1947 Supp. 59-2239) has reference only to claims against the estate of a decedent which, if allowed, will reduce the corpus of his estate or the amount of property which would otherwise be subject to division or distribution among the heirs of an intestate decedent or the legatees and devisees of a testate decedent as the case may be.

"*The controversy here involved is between contending heirs as to the proportionate share each will receive out of the decedent's estate and is in no sense to be regarded as a claim or demand against the estate under the statute. It follows the legal effect of the marriage contract insofar as it affects the heirs' rights to* the estate now ready for distribution is a matter for consideration *at the hearing on final settlement where, under the statute (G. S. 1947 Supp. 59-2249), the court is required to determine the heirs, devisees and legatees entitled to every estate, state the proportion or part thereof to which each is entitled and assign the same to them by its decree.* Therefore, I hold that portion of the demurrer to the petition, predicated upon the premise that rights asserted by the daughter by reason of the contract are barred by the nonclaim statute, was properly overruled.

"In reaching the foregoing conclusion I have not been unmindful of the widow's contention that several of our cases, set forth in the majority opinion, support her position. When they are carefully analyzed I believe they are all distinguishable. Be that as it may, if any of such decisions, or any language to be found therein, are susceptible of such a construction I am convinced that both language and decisions should be promptly and frankly disapproved."

It would seem difficult to distinguish in any manner the case at bar from the Welch case. Appellants state in their brief that the district court relied upon the opinion in *In re Estate of Teeter,* 184 Kan. 567, 337 P. 2d 691, in making its decision in this case. All that was decided in the Teeter case was that the trial court had been mistaken in refusing to pass upon the question of the effect of a postnuptial contract as certified to it from the probate court. In the Teeter case the trial court seems to have been of the opinion it had no jurisdiction in a case involving a final settlement until after the probate court had passed upon the question even though the matter was transferred to it for decision. In reversing the trial court in the Teeter case, we only pointed out that under the amended statute the district court had ample jurisdiction to pass upon the questions involved in a final settlement when transferred to it from the probate court and did not have to await an appeal from the probate court.

However, the Teeter case may be further distinguished from this case although the question was not raised. By the postnuptial contract in the Teeter case, the intestate and his wife had agreed to leave certain specific property to two sons. The sons were bringing the proceeding to "enforce performance of a contract to make a will devising and bequeathing real and personal property (184 Kan. 509)." In other words, in the Teeter case, the proceeding would seem to constitute a demand or claim against the estate, since the sons were not relying on mere inheritance, see *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438; *Yeager v. Yeager,* 155 Kan. 734,

129 P. 2d 242, and other cases cited in the Welch case, *supra.* In this case, under the allegations of the present answer, we understand the appellants to insist that the only right they assert in the estate of the intestate is the right to inherit as heirs. They contend only that the contract in this case bars the widow from inheritance except as specified therein, just as the contract in the Welch case barred the widow in that case from taking by inheritance.

Lastly, the administrator suggests that this case differs from the Welch case in that here the appellants are "strangers" to the record of this estate. We suppose that by that is meant that appellants are collateral heirs and not issue of the intestate and that the wife, but for the alleged contract, would inherit the entire estate. It might be suggested that if the wife had died eleven days prior to the time of her actual death, appellants would have been the heirs of the entire estate. The record does not show the actual relationship between appellants and the intestate, but we may assume they are brothers and sisters or nephews and nieces. The provisions of G. S. 1949, 59-2247 to 59-2249 inclusive provide that the court "shall determine the heirs . . . entitled to the estate." It is further provided that notice of the hearing shall be made under G. S. 1949, 59-2209 and 59-2210. Then notice is to run to "all persons concerned." We have found no authority in this state or in any other jurisdiction and have been cited to none, which holds that one who contends he takes by right of inheritance and by that right alone under the facts of the case may not appear and set up his status of heirship and next of kin at such a hearing.

The term "heir at law" is stressed in the argument of this appeal. The precise meaning sought to be given to his term is vague. At common law an heir was the person to whom real property descended by inheritance. Personal property descended to the "next of kin," at common law. It is worthy of careful note that the widow was not an heir at common law but had only the right of dower or curtsey. It would seem by careful consideration that the argument would seek to give the words "heir at law" the connotation of "heir apparent," that is, the person who expects to inherit the ancestor's property. But of course no man can be an heir of an ancestor still living, nor does the heir apparent obtain a decree settling his title to the property at the death of the ancestor. Normally he has a valid expectancy that the probate court will adjudge him to be the heir on hearing for final settlement and distribution

of the estate. Of course, it is obvious that at common law the appellants were the heirs apparent of Edwin Lytle. All of the terms defined in this paragraph seem quite clear, but reference is made to 39 C. J. S. 881; 16 Am. Jur. 821, 862, sec. 90; and notes cited.

It must be clear that there may be several situations which may arise on the hearing for final settlement and distribution of the estate in which the "heir apparent" or "heir at law" will be found to be ineligible to inherit the estate normally due him. A few illustrations may be given:

Suppose the heir apparent disclaims his right to inherit. This may be quite unusual in jurisdictions based upon the concepts of the common law. But under civil law, and our knowledge thereof is quite limited, the heir may well disclaim because of the doctrine of universal succession under which the heir would seem to inherit the debts as well as the property of his ancestor. If there is a disclaimer in a common law jurisdiction, is the estate to escheat? Certainly not (26A C. J. S. § 64, p. 668 *et seq.* and see p. 672).

A second situation in which the heir apparent may be barred from inheritance and which is actually this case at bar, is where the heir apparent has made a binding, valid contract often with the "ancestor" to release and bar himself from the expectancy as an heir (26A C. J. S. § 62, p. 655). The headnote to the section just cited reads:

"Generally, the release of an expectant share to an ancestor excludes the releasor from participation in the ancestor's estate."

Assume that in this case we had a written contract signed by Edwin and Zelda and acknowledged before a notary public. What would the administrator have the court do on final settlement? Under the arguments advanced by him in this case to the effect that the appellants are "strangers," he would either compel the court to hold that the estate escheated or that Zelda became entitled to the estate because of her own fraud.

Still a third situation where the heir apparent may be found to be barred at the time of the final settlement of the estate may be pointed out. Suppose it were proved at hearing for the final settlement that the heir apparent had been convicted of killing the ancestor as provided in G. S. 1949, 59-513. It must certainly be conceded that in such a case, appellants would inherit the estate as heirs or as "heirs at law" whatever that term may mean.

We believe that the chief argument of the administrator amounts

to this, that the postnuptial contract in this case was admittedly oral, and that it is further stated that the alleged memorandum made by Zelda has been lost. But on this record at this time, we should not impinge upon the well reasoned rule of the Welch case, *supra.*

The rule of *In re Estate of Welch,* supra, has been approved and followed in *Brent v. McDonald,* 180 Kan. 142, 300 P. 2d 396; *In re Estate of Walton,* 183 Kan. 238, 326 P. 2d 264, and *In re Estate of Teeter,* supra. We believe the rule of the case is founded upon reason and is sound.

In the case of *In re Estate of Julian,* 184 Kan. 94, 334 P. 2d 432, we find a contest between "collateral heirs" and an alleged daughter of an intestate. In the Julian case, the contest arose over the right to petition for administration, but would either side of the lawsuit have been barred from raising the question of "heirship" at the time of final settlement of the estate? We think not.

From what has been said, we believe the facts stated in the answer of the appellants in the court below did not state a demand or claim under the nonclaim statute. These facts were admitted by the administrator's motion, and therefore, the trial court erred in sustaining the motion for judgment.

On trial the appellants will have the burden of proving the allegations of their answer, which may or may not be a heavy burden depending upon the evidence introduced.

Under the allegations of the answer, the order appealed from must be reversed. It is hereby so ordered.

SCHROEDER, J. (dissenting): In my opinion the decision herein is not controlled by the rule announced in the case of *In re Estate of Welch,* 167 Kan. 97, 204 P. 2d 714, upon which the court relies. There the parties litigant were a daughter and a widow of the decedent. Both were actually *heirs at law.* That is, upon the death of the decedent, absent any marriage contract or will, the widow would be entitled by the law of intestate succession to one-half of the decedent's estate subject to distribution, and the daughter would be entitled to the other one-half of the decedent's estate by the law of intestate succession. The concurring opinion in *Welch* emphasizes "The controversy here involved is *between contending heirs as to the proportionate share each will receive out of the decedent's estate . . ."* (p. 105.) (Emphasis added.)

In my opinion the authorities set forth in the *Welch* case, in both the court and the dissenting opinions, should control the decision in the instant case. It is noted the concurring opinion in *Welch,* quoted at length by the court herein, recognized the facts in the *Welch* case to be distinguishable from such cases as *In re Estate of Hill,* 162 Kan. 385, 176 P. 2d 515, and other cases upon which the widow relied in the *Welch* case for the proposition that the daughter's assertion of the marriage contract constituted a claim or demand against the estate.

I fail to perceive the distinction the court attempts to make in the case of *In re Estate of Teeter,* 184 Kan. 567, 337 P. 2d 691, where it was conceded the sons were bringing the proceeding to enforce performance of a. contract to make a will devising real property. This was interpreted to mean in the *Teeter* case the proceeding constituted a demand or claim against the estate since the sons were not relying on mere inheritance. Where an heir as a third party beneficiary places reliance upon *a contract* which, if ultimately established would alter the distribution of the assets in an estate, it should make no difference whether the contract is to make a will or to confer rights under a marriage settlement.

In the instant case the appellants cannot rely upon their right to the succession of property by operation of law. They are not heirs at law of Edwin G. Lytle, the decedent. The reasoning applicable in this case should not be confused with the fact that Zelda Lytle died only ten days after Edwin. The legal proposition must be treated in the same manner as it would had Zelda died after the settlement of Edwin's estate. Upon the death of Edwin G. Lytle, absent any postnuptial marriage contract between Edwin and Zelda and absent any will, contractual or otherwise, by Edwin, Zelda was the only person entitled by the law of intestate succession to the distribution of his estate.

Who are the appellants? They are loosely referred to by the court as "heirs" of Edwin G. Lytle. This is incorrect. They cannot assert any rights to the estate of Edwin G. Lytle as *heirs at law.* They cannot by operation of law take the property in succession.

The historical significance of the term "heir" or "heirs" cannot be lightly ignored. The meaning of the term in the *common law sense* of succession is part of the law of this state. The word "heir" or "heirs" at common law had a definite meaning. In its strict and technical import it applied to the person or persons *appointed by law* to succeed to the estate in real property in case

of intestacy. (2 Bla. Com. § 286, p. 201.) Stated in another way, the word "heir" or "heirs" in its ordinary or customary sense means the kindred of the decedent upon whom the law casts the estate in real property in the absence of a devisee, and has reference to the *law of succession.* (See, 19 Words and Phrases, Heirs, p. 199.) The term "heir" has a very definite signification at common law which must be distinguished from the signification it has in those states and countries which have adopted the civil law. *Under the civil law the term applies to all persons who are called to the succession, whether by act of the party or by operation of law.* (Story, Conflict of Laws, § 507.) By reason of our common law history the court should not inadvertently slip into civil law concepts.

It is fully recognized the term "heir" or "heirs" in the common law sense of succession was confined to persons who took *real property* derivatively from the ancestor by operation of law, and the term applicable to persons entitled to the personal property by the statutes of distribution were referred to as the "next of kin." While there was a distinction at the old common law between the succession of real property and personal property when the doctrine of primogeniture prevailed, our probate code has obliterated this distinction. Therefore, where the term "heir" or "heirs" is used herein it should be understood to have reference to real property, and if the property affected by intestate succession is personal property the term "next of kin" can be substituted with equal force.

The appellants are the blood relatives of Edwin G. Lytle. In the first appearance of this case before the court, *In re Estate of Lytle,* 184 Kan. 304, 336 P. 2d 803, the appellants herein were referred to as "claimants" and were also referred to as the "fourteen collateral heirs of Edwin." Presumably, the appellants are the brothers and sisters of Edwin and/or their lineal descendants. As of the date of Edwin's death, however, they were not entitled by *operation of law* to inherit Edwin's property.

Blackstone's Canons of Descent have been superseded in the states of this country by statute. In this jurisdiction the probate code makes provision for the descent and distribution of property in case of intestate succession. (G. S. 1949, 59-501 to 59-514, incl.) Superimposed upon the probate code is the meaning of the word "heir" or "heirs" in its *common law sense* of succession. The use of the word "heirs" in G. S. 1949, 59-508, is illustrative. The probate code provides that no property of an intestate decedent shall pass, except by lineal descent, to a person further removed from the

decedent than the sixth degree as defined therein. (G. S. 1949, 59-509.)

In the probate code (G. S. 1949, 59-2247) "The petition of an executor or an administrator for a final settlement and accounting, and a determination of the persons entitled to the estate of a decedent, shall, in addition to other requirements contain: . . . (2) the names, residences, and addresses of the heirs, devisees, and legatees; . . ." No practicing lawyer in preparing such petition for an executor or an administrator would list more persons under the term "heirs" than were the *heirs at law* of a decedent. In other words, they would not list all blood relatives who are the lineal descendants of the decedent and those not further removed from the decedent than the sixth degree. When the probate code provides that the probate court "shall determine the heirs . . . entitled to the estate" (see, G. S. 1949, 59-2247 to 59-2249) the legislature intended it to mean "heirs" in the common law sense of succession—heirs at law, those who succeed to the property of an intestate decedent by *operation of law.*

When the court says "We have found no authority in this state or in any other jurisdiction and have been cited to none, which holds that one who contends he takes *by right of inheritance and by that right alone* under the facts of the case may not appear and set up his status of heirship and next of kin at such a hearing," (Emphasis added) it is not referring to a rule which has application to the facts in the instant case. The blood relatives of Edwin in the instant case, appellants herein, are not the heirs at law of Edwin and are not entitled to take by right of inheritance. *Their rights, if any, are derived solely by reason of a contract* which they allege was "an oral property settlement contract" entered into between Edwin and Zelda. If they are entitled to take at all, it is by act of a party and not by operation of law.

Perhaps the strongest argument that can be made for the decision of the court is found in the wording of the nonclaim statute. (G. S. 1949, 59-2239.) But to say that "all demands" as used in this section of the statute has reference only to claims against the estate of a decedent which, if allowed, will reduce the corpus of his estate or the amount of property which would otherwise be subject to distribution among the heirs of an intestate decedent, does not change the nature of the appellants' assertion from a claim against the estate to an assertion of a right to inherit. The property subject to distribution at the final settlement is that which is available

for distribution to the heirs at law. If the appellants prevailed by asserting the contract, the corpus of the estate subject to distribution by the law of descent and distribution would be reduced. Zelda would take less.

The appellants must assert the contract between Edwin and Zelda as third party beneficiaries if they are to receive anything at all, just as the two sons in the *Teeter* case were required to assert, as third party beneficiaries, their rights under the postnuptial contract of their father to make a will. If, in the instant case, the appellants could establish their claim under the contract, their rights to the property of Edwin would not be asserted as heirs of Edwin but as heirs of Edwin *if Zelda were considered not to be entitled to inherit* in accordance with the contract.

It is respectfully submitted the alleged rights of the appellants under a marriage contract between Edwin and Zelda constitute a claim or demand *against the estate* and since the claim under the contract has not been exhibited within nine months the rights claimed thereunder are barred. *(In re Estate of Hill,* supra; and *In re Estate of Teeter,* supra.)

In substance, the decision logically applied will permit any person, who is a blood relative not further removed from a decedent than the sixth degree and the lineal descendants of a decedent, to await the final settlement in an estate and there contest his right "to inherit," as interpreted under the civil law concept of inheritance, based upon some prior marriage contract to share in the assets of a decedent's estate. The decision of the court will inject confusion into the orderly administration of a decedent's estate and contrary to the plain intent of the legislature as set forth in the probate code. It is repugnant to the decision in the *Welch* case which held the legal effect of a marriage contract, insofar as it affected the *heirs'* rights to an estate ready for distribution, was a matter for consideration at the hearing on final settlement *where, under the statute* (G. S. 1947 Supp., 59-2249), *the court is required to determine the heirs,* devisees and legatees entitled to every estate, *state the proportion or part thereof to which each is entitled* and assign the same to them by its decree. In *Welch* the term "heirs" was clearly used as intended by the probate code in its common law sense of succession.

The decision of the learned trial judge should be affirmed.

PRICE, J., concurs in the foregoing dissenting opinion.