No. 46,147

In the matter of the Estate of Elizabeth McKay, Deceased. (DAN WEBB, Administrator of the Estate of Elizabeth McKay, Deceased, OREN L. McKAY, OPAL HERRING, LOWELL O. McKAY, JOSEPH McKAY and JACOB McKAY, *Appellants,* v. GLADYS DAVIS, *Appellee.*)

(491 P. 2d 932)

Opinion filed December 11, 1971.

*Jack R. Euler,* of the firm of Euler and Euler, of Troy, argued the cause and *Robert Guier,* of Troy, was with him on the brief for the appellants.

*John S. May,* of Atchison, argued the cause and *J. David Farris,* of Atchison, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an action to determine the right of an illegitimate child to inherit by intestate succession from an alleged paternal grandparent.

The essential facts are not in dispute. Elizabeth McKay, the decedent whose estate is involved in this litigation, died intestate on November 30, 1965. The decedent was survived by four sons and one daughter who, together with the administrator of her estate, are the appellants herein. One son, Hubert McKay preceded Elizabeth McKay in death. Hubert was born May 29, 1897, and died October 21, 1918. He was never married.

Appellants admit that on October 5, 1917, slightly more than one year preceding his death, Hubert McKay was determined to be the father of Gladys Davis in a bastardy proceeding in the

district court of Doniphan County. Appellants further concede that if the right to inherit is otherwise established an illegitimate child may inherit from a grandparent by representation of a pre-deceased parent whom he replaces.

The right of appellee to inherit from her intestate paternal grandmother, Elizabeth McKay, depends upon the application of pertinent statutes to the facts which we have recited. In simple terms, appellants claim the rights of appellee must be determined under the law existing in 1918 when paternity was determined. Appellee, on the other hand, contends her rights are governed by the statutes in effect on the date of the death of Elizabeth McKay in 1965.

The right of an illegitimate child to inherit through its mother was established by the territorial legislature (G. S. 1855, Chap. 60, Sec. 8) and extended, under certain conditions, with respect to the father by the territorial legislature in 1859 (G. S. 1862, Chap. 80, Sec. 24). No substantial change was made until the adoption of the Probate Code in 1939.

The governing statute in effect in 1918 was G. S. 1915, § 3845 which reads:

"**Illegitimate children, when to inherit from father. § 22.** They shall also inherit from the father whenever they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing."

Prior to 1939 statutes governing the rights of inheritance between illegitimate children and the mother appeared as R. S. 22-121, and as to the father R. S. 22-122 and 123.

In the revision of the Probate Code in 1939 several separate sections of prior laws were merged together with R. S. 22-121 and 22-122 into what now appears as K. S. A. 59-501:

"As used in this article, the word 'children' means natural children, including a posthumous child, and children adopted as provided by law, and includes illegitimate children when applied to mother and child, and also when applied to father and child where the father has notoriously or in writing recognized his paternity of the child, *or his paternity thereof has been determined in his lifetime in any action or proceeding involving that question in a court of competent jurisdiction.* The word 'issue' includes adopted children of deceased children or issue." (Emphasis supplied.)

The effect of the 1939 amendment was to add judicial determination to notorious and written recognition of paternity as an

additional method of establishing paternity with respect to the right to inherit from a putative father.

In the case of intestate succession, descent and distribution to surviving children, or if deceased then to their living issue, is provided for in K. S. A. 59-506, which reads:

"If the decedent leaves a child, or children, or issue of a previously deceased child or children, and no spouse, all his property shall pass to the surviving child, or in equal shares to the surviving children and the living issue, if any, of a previously deceased child, but such issue shall collectively take only the share their parent would have taken had such parent been living. If the decedent leaves such child, children, or issue, and a spouse, one-half of such property shall pass to such child, children, and issue as aforesaid."

As we have previously noted, appellants' counsel conceded, on oral argument, that an illegitimate child, whose paternity has been established, is entitled to inherit by representation of a deceased parent from a grandparent. (See *Smith v. Smith*, 105 Kan. 294, 182 Pac. 538.) The *Smith* case was decided in 1919, but we know of no change pertaining to intestate succession in the new probate code which affected the holding therein. The words "living issue" as used in statutes concerning descent and distribution are the equivalent of living children. (*Riley v. Day*, 88 Kan. 503, 129 Pac. 524.)

Since appellee makes no serious contention that the bastardy proceeding, standing alone, meets the requirements of either notorious or written recognition of paternity, her right to inherit from her grandmother must stem from the judicial determination of paternity in the Doniphan County District Court bastardy proceedings.

The trial court ruled in pertinent part as follows:

"Section 59-501, K. S. A. and 59-506, K. S. A. should be liberally construed in determining whether an illegitimate child may represent its father in descent and distribution.

"The statutes permit a grandchild to inherit from a grandparent notwithstanding the fact that the child or its parent whom he replaces by representation is illegitimate.

"Illegitimate children fall within the terms, issue, child, children or heirs as used in Article 5, Chapter 59, K. S. A.

"An illegitimate grandchild inherits from a paternal grandparent by representation of a prior deceased father by intestate descent and distribution when the paternity of the grandchild was determined in the lifetime of the father in a bastardy proceeding in which the father was the defendant."

Appellants strenuously argue that the effect of the trial court's

judgment was to give 59-501 retrospective operation in violation of well-established rules of statutory construction.

We cannot agree with the position taken by appellants for a number of reasons. First, we believe the change made in the prior law by the enactment of 59-501 was only remedial legislation. The right of an illegitimate child to inherit from the father, when recognition was established, was fully confirmed in the prior statute. The only change in the prior law worked by the enactment of 59-501 was to make a judicial determination the equivalent of notorious or written recognition of paternity. Second, there were no heirs of or vested rights in the estate of Elizabeth McKay until her death on November 30, 1965. (*McCormick v. Maddy*, 186 Kan. 154, 348 P. 2d 1007; 23 Am. Jur. 2d., Descent and Distribution, § 21, p. 768; K. S. A. 59-502.) Third, we believe that the language used in 59-501, read together with 59-502 and 59-506, leads to the conclusion that the right of appellee to inherit from her grandmother is to be determined as of the date of the grandmother's death and under the law in effect at that time.

We fully agree with the familiar rule cited by appellants that generally a statute will not be given retrospective operation unless the intention of the legislature that it shall so operate is unequivocally expressed. (*Douglas County v. Woodward*, 73 Kan. 238, 84 Pac. 1028; and *Johnson v. Warren*, 192 Kan. 310, 387 P. 2d 213.) However, we do not agree that the application of 59-501 to the facts in the instant case brings about retrospective operation within the scope of the rule.

The purpose of the statute in question by its own terms is to define the word "children" as the word is used in statutes governing intestate succession, none of which become operative until the death of the ancestor. It simply states that children shall include illegitimate children when applied to father and child where the father has notoriously or in writing recognized paternity or where it has been judicially determined. In other words, the statute merely draws upon the previous establishment of paternity for its operation. A statute is not to be regarded as operating retrospectively because of the mere fact that it relates to antecedent events or draws upon antecedent facts for its operation. (50 Am. Jur., Statutes, § 477, p. 493; *Benjamin v. Hunter* [United States Court of Appeals, 10th Cir.] 176 F. 2d 269.)

This court has not been confronted with the precise question

herein presented. However, treatment given the subject in the case of *In re Estate of Case,* (1956), 180 Kan. 53, 299 P. 2d 589, clearly forecast our present holding. In that case an illegitimate child made a claim against her alleged father's estate; claiming that a bastardy proceeding commenced in 1899, before a justice of the peace, amounted to a judicial determination of paternity under 59-501, *supra,* which entitled her to inherit. On this issue her claim was denied on the ground that the records of the justice of the peace, which are quoted in the opinion, showed only a compromise settlement and was not "to be expanded into a judicial determination of paternity in a bastardy proceeding." The treatment of the issue in the *Case* opinion clearly implies that if the bastardy proceedings had resulted in a judicial determination of paternity, as in the instant case, then claimant would have been entitled to inherit even though the bastardy proceedings took place in 1895, many years before the enactment of the probate code in 1939. In the opinion the court carefully analyzed the justice of peace records to show that the proceedings resulted merely in a compromise of the dispute and a financial settlement and that no determination of paternity was made, an undertaking entirely unnecessary if the proposition advanced by appellants herein would have been recognized as the law.

In a comprehensive commentary on "Illegitimacy in Kansas" by Donald W. Vasos, Vol. 14 Kansas Law Review, p. 473, the statutory and case law developments pertaining to the rights of an illegitimate child in Kansas are discussed in detail, commencing with legislation by the territorial legislature. Developments noted by the author clearly indicate a trend toward the erosion of the harsh treatment accorded an illegitimate under common law.

The view we have adopted is supported by prevailing authorities dealing with statutes giving rights of inheritance to illegitimates as indicated in 10 Am. Jur. 2d., Bastards, § 148:

"Construction of statutes giving rights of inheritance; strict or liberal construction.

"Diversity of judicial opinion as to the rights of illegitimates to inherit under various statutes is said to spring not so much from the differences in statutory provisions as from the differing views as to whether such statutes should be regarded as remedial and hence liberally construed, or as in derogation of the common law and strictly construed.

"There are a number of decisions which favor a strict rather than a liberal construction of statutes conferring rights of inheritances on illegitimate chil-

dren, but *the decided trend of modern authority is to regard such legislation as basically remedial and to indulge in a liberal interpretation in order to give effect to the public policy reflected in legislation designed to remove the onus of illegitimacy from unoffending children. . . ."* (pp. 949, 950.) Emphasis supplied.)

In section 150 we find this further statement:

". . . The prevailing rule is that the statute should be given a liberal interpretation, so as to permit inheritance by an illegitimate from kindred of the parents where this can be done without violence to that or other statutes, and after proof of filiation he will receive the benefit of the presumption of legitimacy." (p. 951.)

In enacting statutes governing the right of an illegitimate to inherit, the legislature was dealing with a class—illegitimate children—and we find no restrictive language indicating an intention to limit application of the statute to a part of the class. Surely, the legislature did not intend to create two classes of illegitimate children—those whose paternity was judicially determined subsequent to 1939 and those unfortunate enough to have had their paternity determined prior thereto.

We believe the question of what law governs in point of time with respect to the right of inheritance of an adopted child is closely analogous to the issue in the instant case. We find this comment in 2 Am. Jur. 2d., Adoption, § 109:

". . . In most cases, however, in which the question has arisen, the statute in force at the time of the death of the intestate has been held to be controlling, and has been applied in determining the right to inherit in cases of adoption effected prior to the enactment or amendment of the statute. . . ."

In the case of *Sorenson v. Rasmussen,* 114 Minn. 324, 131 N. W. 325, the court was faced with a contention that the application of a statute to children adopted prior to its enactment made the statute operate retrospectively. In rejecting the contention the court reasoned:

"It is urged that to apply this statute to all adopted children makes it retrospective, and that such construction should not be given the law unless it clearly appears that it was so intended by the enacting body. We do not think this statute falls within the class of laws to which this rule of construction contended for by appellant is frequently and properly applied. This statute does not give to past acts a new effect upon mutual rights or liabilities. Nor does it change or affect existing rights. Rights by inheritance in an estate do not accrue until the death of the owner intestate. A law providing for the future descent of property is prospective. The statute in question at its passage, related to future inheritances by adopted children. It conferred or took away no present right.

A law of inheritance making a change in the prior law as to adopted children—a numerous, permanent, existing class of persons—does not differ in principle from a law making a change in the rules of inheritance of property by force of the relationship of husband or wife through the relationship between other classes, and no different rule of construction of a statute effecting such change is required." (pp. 327, 328.)

The paternity of Gladys Davis was determined by a court of competent jurisdiction during her putative father's lifetime; therefore under the provisions of K. S. A. 59-501 and 59-506 she became an heir, by representation, of her paternal grandmother, Elizabeth McKay, who died intestate in 1965.

The judgment is affirmed.

O'CONNOR and PRAGER, JJ., not participating.