Leroy C. GASSAWAY, Sr., Appellant,

v.

Nynell C. GASSAWAY, Appellee.

No. 84-271.

District of Columbia Court of Appeals.

Argued Feb. 22, 1985.

Decided March 22, 1985.

De Long Harris, Washington, D.C., for appellant.

Darrel S. Parker, Washington, D.C., for appellee.

Before PRYOR, Chief Judge, and NEWMAN and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant challenges the trial court's distribution of marital property, pursuant to D.C.Code § 16-910(b) (1981), upon entry of a final decree of divorce. He argues that, in awarding the marital home to his wife, the court abused its discretion by basing that award, in part, on findings that appellant (1) was in "reasonably good health" and (2) would either inherit his mother's home or have unlimited use of it for his lifetime. Because we agree with the second contention, we reverse and remand for further proceedings.

I.

Leroy and Nynell Gassaway married in 1952 and separated in 1979. They have one grown son. Neither party contested the divorce at trial; they differed only on the division of marital property.

Early in their marriage, the Gassaways purchased a home at 950 Shepherd Street, N.W., with the help of Mr. Gassaway's parents. Shortly thereafter, the Gassaways sold that house and bought another at 809 Emerson Street, N.W., where they lived throughout their marriage. They acquired the Emerson Street property out of the proceeds from the Shepherd Street

home plus $1,500; they each contributed approximately $500, as did Mr. Gassaway's mother. In 1965, the Gassaways refinanced the house and used $1,000 of the proceeds to buy out Mr. Gassaway's mother's interest (apparently reflecting both her contribution traceable to the Shepherd Street property and her additional payment toward the Emerson Street home). During the course of the marriage, both husband and wife contributed to the mortgage costs and maintenance of their home, as well as to household expenses and child care. After Mr. Gassaway separated from his wife in 1979, she remained on Emerson Street, continued to pay the taxes, insurance, and costs of repair on the property, and retired the mortgage with a lump-sum payment of $3,061.56 out of her own funds.

Both parties are retired government employees. The husband receives a monthly pension of $965; the wife has a monthly pension of $601. In addition to the Emerson Street property, they owned two cars (one a taxicab driven by Mr. Gassaway) and two burial plots.[1] Mr. Gassaway testified that, because of his health problems, he was unable to operate his taxicab on a regular basis and earned only $200 from it in 1983.

In dividing the marital property, the court awarded to each party his or her own pension, the car he or she customarily drove, and one of the burial plots. Appellant does not challenge that distribution; but he questions the award of the marital home, the Emerson Street property, entirely to Mrs. Gassaway.

Mr. Gassaway's counsel submitted a memorandum to the trial court proposing that his client receive 45% of the tax-appraised value ($65,000) of the Emerson Street house, or $29,250, in the form of equal monthly installments of $162.50 over a period of 15 years, payable without interest. The court, however, issued a judgment of divorce in which it awarded the Emerson Street home to Mrs. Gassaway as her "sole and separate property." The court based this award substantially upon findings which Mr. Gassaway challenges on this appeal: that Mr. Gassaway was in "reasonably good health"[2] and had "unlimited use" of his mother's house at 319 Aspen Street, N.W., and, as "his mother's sole heir," would either become the owner of the property or continue to have unlimited use throughout his life.[3]

The court took into consideration appellant's access to his mother's home on Aspen Street after hearing the following testimony: Mrs. Gassaway testified that, when the Emerson Street house was refinanced for a cash loan of $5,000 in 1965, she "[didn't] know what Mr. [Gassaway] did with it" but she concluded that her husband helped his mother buy the Aspen Street property "in that same month." Mrs. Gassaway further testified that she had seen the deed to the Aspen Street property in the piano drawer and that Mr.

---

1. The trial court found that Mrs. Gassaway owned two unimproved lots in Maryland which she had purchased with her own money. She also jointly owned with the Gassaways' son a $5,000 savings account and a few U.S. Savings bonds. This property is not at issue.

2. Finding No. 14 states in part:
   Neither of the parties has any substantial or disabling health problems, and each is in reasonably good health.

3. Findings Nos. 13, 17, and 18 state in part:
   13. The parties obtained a loan on the premises at 809 Emerson Street, N.W., and this loan was used in part, at least, to purchase premises on Aspen Street, N.W., held solely in the name of the plaintiff's mother.

The plaintiff is his mother's sole heir. This loan was paid by the parties as a joint family expense, along with all other family expenses. This Aspen Street, N.W., home has two levels, a basement and a first floor. It has eight rooms including two baths and four bedrooms. This house is now occupied by the plaintiff's mother and her roomer.
   17. The plaintiff resides in an apartment, which he has rented since 1972. It is clear, however, that the plaintiff has unlimited use of the Aspen Street property.
   18. As indicated above, the plaintiff is his mother's sole heir, and the Court finds that the plaintiff will either become the owner of the Aspen Street property or continue to have unlimited use of that property for the remainder of his life.

Gassaway's name was on it, along with his mother's and grandmother's names.[4] Mr. Gassaway testified that his name was not on the title and never had been. He did testify, however, that although he did not live with his mother and had never done so since his marriage, he used her Aspen Street home as a mailing address[5] and visited his mother daily to take care of her and her home. He also testified that he had taken out a credit union loan in the amount of $1,200 to pay for improvements on the Aspen Street house. The court ascertained that this property was a two-floor, eight-room, four-bedroom home, occupied only by Mr. Gassaway's mother and a female boarder.

## II.

The trial court has broad discretion in adjusting the property rights of the parties incident to a divorce, pursuant to D.C.Code § 16–1910(b) (1981). *Barbour v. Barbour,* 464 A.2d 915, 922 (D.C.1983); *Hairston v. Hairston,* 454 A.2d 1369, 1371 (D.C.1983); *Powell v. Powell,* 457 A.2d 391, 393 (D.C. 1983); *Broadwater v. Broadwater,* 449 A.2d 286, 287 (D.C.1982); *Murville v. Murville,* 433 A.2d 1106, 1109 (D.C.1981); *Tur-*

*pin v. Turpin,* 403 A.2d 1144, 1146–47 (D.C.1979). Section 16–910 empowers the court to assign to each party his or her own separate property and then equitably to distribute all the marital property, "after considering all relevant factors including, but not limited to," those listed in the statute.[6] We will uphold the court's determination unless it is "plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (1981); *see Murville,* 433 A.2d at 1109.

### A.

■ After reviewing the trial court's findings and conclusions, we can easily dispose of appellant's first contention, that the court abused its discretion in finding both parties in "reasonably good health." Appellant testified at trial that he suffered from diabetes, high blood pressure, and arthritis, and that these conditions limited his ability to earn money driving his cab. There is, however, no reason to believe that the court was inattentive or insensitive to Mr. Gassaway's problems when it found him, as well as his wife, in "reasonably good health," *supra* note 2, and based its property distribution in part upon that find-

---

**4.** Appellant's counsel objected, quite properly, to Mrs. Gassaway's testimony as hearsay and asked that she not be allowed to testify as to the contents of the deed unless the deed itself was introduced in evidence, in satisfaction of the "best evidence" rule. The federal "best evidence" rule, FED. R. EVID. 1002, which requires the introduction into evidence of the original to prove the content of a writing, corresponds to local District of Columbia court practice. S.W. GRAAE, DISTRICT OF COLUMBIA STATUTORY AND CASE LAW ANNOTATED TO THE FEDERAL RULES OF EVIDENCE ¶ 10.2 (1976).

**5.** Mr. Gassaway stated that he used his mother's address to receive mail because he had had problems with mail theft at his apartment building.

**6.** Section 16–910(b) (1981) provides that, after the court has assigned separate property to each spouse, it shall:

distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties,

in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

Before its amendment in 1977, § 16–910 merely directed the court to distribute marital property "in such manner as seems equitable, just, and reasonable." The list of factors to be considered by the court, added by the 1977 amendment, was largely a codification of guidelines enunciated in cases brought under old § 16–910. *Turpin v. Turpin,* 403 A.2d at 1146–47.

ing. Mrs. Gassaway testified that she had heart disease and high blood pressure. Moreover, at the time of trial, she was 67 years old whereas her husband was 60. The court showed a conscientious awareness that health was an important factor to be considered, *see* D.C.Code § 16–910(b), *supra* note 6, particularly in distributing the property of an elderly couple.[7] The court's choice of words to describe both parties—"reasonably good health"—merely acknowledges that both Mr. and Mrs. Gassaway had health problems all too common in persons of their years. We find no abuse of discretion here.

### B.

We turn to the court's reliance on its findings that Mr. Gassaway had "unlimited use" of his mother's Aspen Street property, and that he would either inherit the property or continue to have such unlimited use for the rest of his life. We agree with appellant that, in relying on these findings, the trial court erroneously applied § 16–910.

Even if we assume that the court's findings have support in the record, we nonetheless confront a substantial legal question: whether Mr. Gassaway's present "unlimited use" of the Aspen Street house, when coupled with an expectation of inheritance or some other basis for anticipating continued use of that property for the rest of his life, comprised a "relevant factor" for the court to consider in awarding the Emerson Street home solely to Mrs. Gassaway.

■■■■■ The only factors listed in the statute that appear to cover the situation are a spouse's "assets" and "the opportunity of each [spouse] for future acquisition of assets and income." D.C.Code § 16–910(b), *supra* note 6. The court did not find that Mr. Gassaway had a legal or equitable interest in the Aspen Street property.[8] We do not perceive a legislative intent to permit the court to equate informal access to property or unenforceable expectations of inheritance [9] with the kinds of "assets" or "opportunit[ies] . . . for future acquisition of assets" that can justifiably be considered in allocating marital property. We understand that language to mean a court must base its findings of assets or opportunities to acquire assets on a spouse's legal or equitable interest in marital or nonmari-

---

**7.** In responding to the closing arguments of counsel, the court expressed its special concerns, referring to the parties' "health" no fewer than four times. The court said: "I am concerned with the health and welfare of these parties not only at this time and presently, but . . . for the balance of their lives. And my determination must be made in such a way to be equitable with respect to the health and welfare of both these parties for the remainder of their lives."

**8.** Mr. Gassaway testified that he had no interest in the property, and Mrs. Gassaway's testimony to the effect that Mr. Gassaway's name was on the deed was inadmissible under the rules of evidence. *See supra* note 4. Mr. Gassaway's expenditure of $1,200 for improvements on his mother's property could not, without more, support a claim on the property. Finally, Mrs. Gassaway's testimony that part of the joint marital money (obtained from refinancing the Emerson Street property) went to buy the Aspen Street home, while not objectionable as hearsay, cannot be given much weight. She repeatedly said that she did not know how that money was spent, whereas Mr. Gassaway specifically explained that the money was used to pay off his mother's $1,000 loan on the Emerson Street property, to pay off his Cadillac, and to make repairs on Emerson Street.

**9.** The trial court's finding that Mr. Gassaway "is his mother's sole heir" can have no legal significance. A living person has no heirs; the rights of an heir do not vest until the ancestor dies. *Morsman v. Commissioner of Internal Revenue*, 90 F.2d 18, 26 (8th Cir.) (citations omitted), *cert. denied*, 302 U.S. 701, 58 S.Ct. 20, 82 L.Ed. 542 (1937); *In re Estate of Oppelt*, 203 N.W.2d 213, 214 (Iowa 1972); *McCormick v. Maddy*, 186 Kan. 154, 159–160, 348 P.2d 1007, 1011 (1960); *Bose v. Bose*, 11 Or.App. 466, 468–470, 503 P.2d 1259, 1261 (1972). Thus, "[t]here are no heirs, but only heirs apparent, to the living, persons with mere expectancies or possibilities of inheritance which may be fulfilled or defeated, depending upon various contingencies and situations." *Ostrander v. Preece*, 129 Ohio St. 625, 632, 196 N.E. 670, 673 (1935).

tal property [10] and/or on a predictable earning capacity.[11]

While we recognize that § 16–910(b) does not limit the court to using the "relevant factors" specified in the statute, we conclude that the trial court's approach here is simply too speculative to be "equitable, just and reasonable." In taking into account the Aspen Street property, the court anticipated, indeed counted on, continuation of a state of affairs beyond the control of the affected spouse, Mr. Gassaway, and even impinged on the freedom of his mother, who was not party to the proceeding, to use and dispose of her property as she sees fit.

In *Mumma v. Mumma*, 280 A.2d 73, 76 (D.C.1971), this court ruled that gifts to the husband from his parents could not be considered in determining his income for purposes of computing his alimony obligation, presumably because any expectation of gifts is inherently speculative and thus could not be counted upon as a predictable portion of the husband's annual financial return. *Accord Scott v. Scott*, 645 S.W.2d 193, 198 (Mo.Ct.App.1982) (despite history of gifts to wife from parents, court properly declined to consider "such an uncertain source of funds as future gifts" in computing her alimony award). The same reasoning is applicable to anticipated gifts of real property or other assets, *e.g.*, through inheritance. *Compare In re Marriage of Smith*, 100 Ill.App.3d 1126, 1130, 56 Ill. Dec. 716, 720, 427 N.E.2d 1262, 1266 (1981) (consideration of wife's future inheritance

not error where testator had died and estate merely remained to be administered).

We recognize that some courts, in construing the applicable statutes, have ruled otherwise. *See Moritz v. Moritz*, 10 Fam.L. Rep. (BNA) 1534 (Pa.Ct.Common Pleas, Allegheny Cty., July 12, 1984) (wife's expected inheritance from mother is relevant factor with regard to alimony and equitable distribution of property and is thus proper subject for discovery); *James v. James*, 248 S.W.2d 706, 708 (Ky.1952) (given evasive testimony concerning present earnings, husband's likely inheritance from estate of mother may be taken into account in fixing his alimony obligation). We reject this approach as mischievous.

In sum, the trial court exercised its discretion on the basis of an erroneous legal premise which unquestionably affected the outcome. Alternatives were available that would have preserved the parties' respective needs for income and equitably allocated the marital property.

Reversed and remanded.

---

**10.** The court may consider a spouse's nonmarital property in evaluating, under all the circumstances, how much of the marital property should be awarded to the other spouse. *See, e.g., In re Marriage of Davenport*, 92 Ill.App.3d 675, 677, 48 Ill.Dec. 193, 196, 416 N.E.2d 88, 91 (1981) (in partial award to husband of real property purchased in wife's name, court could consider wife's "substantial amount of non-marital property"); *In re Marriage of Burris*, 557 S.W.2d 917, 918 (Mo.Ct.App.1977) (court properly considered husband's separate property valued at $40,000 in dividing marital property); *Hussey v. Hussey*, 280 S.C. 418, 423, 312 S.E.2d 267, 271 (Ct.App.1984) (court may consider one spouse's inherited property in determining

whether division of marital property is equitable).

**11.** *See, e.g., Murville v. Murville*, 433 A.2d 1106, 1110 (D.C.1981) (award of 75% interest in marital home to husband warranted by "totality of circumstances" where husband, during most of marriage, was sole breadwinner and had furnished sole consideration for purchase of home, but now was retired on disability, unable to work, in poor health and in need of surgery, and wife was employed full time); *Viers v. Viers*, 600 S.W.2d 214 (Mo.Ct.App.1980) (award of marital home to wife upheld where husband was experienced tool and die maker and wife had no marketable skills).