John Thomas Edge v. Commissioner.
Edge v. Commissioner
Docket No. 77975.
United States Tax Court
T.C. Memo 1961-94; 1961 Tax Ct. Memo LEXIS 249; 20 T.C.M. (CCH) 421; T.C.M. (RIA) 61094; March 31, 1961
*249 Held, expenses incurred by petitioner during 1957 in Chicago, Illinois, and the vicinity thereof, for travel, meals, and lodging are not deductible as "away from home" traveling expenses under section 62(2)(B) or 162(a)(2), I.R.C. 1954. Floyd Garlock, 34 T.C. 611, followed. Held further, petitioner is not entitled to dependency exemptions under sections 151 and 152 for his mother and two minors, allegedly his illegitimate children. Russel C. Jones, Esq., 321 West Fourth St., Owensboro, Ky., for the petitioner. Arthur Clark, Jr., Esq., for the respondent. BRUCE *250 Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves a deficiency in Federal income tax for the year 1957 in the amount of $1,115.46. The issues are: (1) whether amounts incurred by petitioner during 1957 for meals, lodging, and travel constitute away-from-home traveling expenses within the meaning of sections 62(2)(B) or 162(a)(2), Internal Revenue Code of 1954; and (2) whether petitioner is entitled to dependency exemptions under sections 151 and 152 for his mother and for two minors, allegedly his illegitimate children. Of the itemized deductions claimed respondent has questioned only the away-from-home traveling expenses; the remaining itemized expenses being less *251 than $1,000 and less than 10 percent of the adjusted gross income, respondent allowed the standard deduction in lieu of the itemized deductions. Findings of Fact John Thomas Edge, hereinafter referred to as the petitioner, filed his Federal income tax return for the year 1957 with the district director of internal revenue for the district of Kentucky. The petitioner is an electrician, more particularly an electric lineman, and has been a member of the Owensboro, Kentucky, local of an electrical workers' union since 1950. Except for the months of March and April 1958, when he was employed by L. E. Myers Electric Co., Cloverport, Kentucky, petitioner was employed by the A & A Electric Company in Chicago, Illinois, or in the vicinity thereof, from January 1956 to at least December 1958. During 1957 this employment was primarily in the construction of high tension towers for electric lines. The headquarters of the A & A Electric Company is Cicero, Illinois. During the year 1957, the petitioner resided in rooming houses and hotels, apparently renting on a weekly basis and eating out at restaurants. He moved from one location to another partly because he wished to be closer to *252 his place of employment and partly because rides to and from the job site would be more readily available. During the years 1956 through 1958, petitioner's places of employment and residence were as follows: Year
Months
Place of Employment
Type of Employment
Place of Residence
1956
Jan.-Mar.
Distribution work
Towne Hotel, Cicero, Ill.
Apr.-Jul.
79th & Lawndale
Distribution work
2564 S. Yale Ave., S. Chicago,
Ill.
Aug.-Oct.
North
Distribution work
3948 W. 22d St., Chicago, Ill.
Nov.-Dec.
North Lake
2546 S. Yale Ave., Chicago, Ill.
1957
Jan.-Feb.
Burwin (Berwyn?), Ill.
Painted street lights
1931 S. Crawford Ave., Chicago,
Ill.
Mar.-Jun.
From Lockport, Ill. to
Public Service Co.
201 N. State St., Lockport, Ill.
Bedford Park, Ill.
Jul.-Aug.
From Lumbard (Lom-
Public Service Co.
1514 Ferrisst., Franklin Park,
bard?) Substation to
Ill.
North Lake Substa-
tion, West Illinois
Sept.-Oct.
Des Plaines, Ill. to
Public Service Co.
Hotel on 41 Highway, Des
Waukegan, Ill.
Plaines, Ill.
Nov.-Dec.
97th & Harlem Ave.,
1315 N. 23d St., Melrose Park,
Chicago, Ill.
Ill.
1958
Jan.-Feb.
Des Plaines, Ill. to
Public Service Co.
120 North 24th St. Melrose
Waukegan, Ill.
Park, Ill.
Mar.-Apr.
Cloverport, Ky.
830 Sutherland Ave., Owens-
boro, Ky.
May
Montline, Ill.
Public Service Co.
2438 N. 22d St., Melrose Park,
Ill.
June
Berwyn, Ill.
Painted street lights
2438 N. 22d St., Melrose Park,
Ill.
July
Nappersville (Naper-
Public Service Co.
Hotel, Naperville, Ill.
ville?), Ill.
August
Rainewood, Ill.
Public Service Co.
Hotel, Rainewood, Ill.
Sept.
Highway Dept.
2438 N. 22d St., Melrose Park,
Ill.
Oct.-Dec.
Blue Island to Good-
Public Service Co.
201 Mississippi St., Joliet, Ill.
win's Grove, Ill.
*253 The petitioner was unmarried when he went to Chicago. He married in 1958 and thereafter lived with his wife in Chicago. The petitioner's mother, Mamie Edge, and his father resided at 830 Sutherland Avenue, Owensboro, Kentucky, in 1957. Mamie Edge and her husband both drew social security benefits; Mamie's social security pension amounted to about $41 or $42 per month. The petitioner contributed some funds to his parents' support in 1957, part of which was used for the payment of the rent on their home. Since about 1950 petitioner has worked only about two years in Owensboro, Kentucky. He maintained his voting registration, his principal union affiliation, and his membership in the church and a rod and gun club in Owensboro, and kept some personal belongings at his parents' home. During 1957 petitioner visited his parents' home in Owensboro about twice a month. Louise Teasley, hereinafter referred to as Louise, has been married to Milton Teasley since about 1943. In September 1949 Milton Teasley was sentenced to serve a term in the penitentiary. Before serving that sentence he was required to serve another sentence in the county jail. His sentence in the penitentiary commenced *254 in May 1950 and continued for about 27 months, at which time he returned home, where he remained about 2 to 4 months before he was again sentenced to the penitentiary. This sentence was for a period of about 2 years, at the completion of which he returned home once more, apparently remaining several months before being sentenced to a 5-year term in the penitentiary. Louise gave birth to children, all with the surname of Teasley, on the following dates: July 16, 1944, December 12, 1945, June 15, 1948, August 3, 1949, September 3, 1951, October 17, 1952, March 6, 1954, June 25, 1955, June 4, 1957, and August 30, 1958. Mary Sherry Elaine Teasley was born on September 3, 1951. Thomas Allen Teasley (referred to as John on petitioner's tax return for 1957) was born on June 4, 1957. During 1957 petitioner sporadically gave sums of money ranging from $15 to $25, or even an occasional $50, to Louise for the support of Mary Sherry. During 1957 Louise received public assistance from the State in an unspecified amount. These public assistance payments started at $50 per month when Milton was first sent to the penitentiary and were increased with each additional child. Louise paid her household *255 expenses, including all expenses for the support of her children, from whatever funds she had available. Louise entered Our Lady of Mercy Hospital, Owensboro, Kentucky, on June 4, 1957, and on that date gave birth to Thomas Allen Teasley, who died 2 days later on June 6, 1957. The child's grave was opened and he was buried by the Owensboro Funeral Home. On June 3, 1957, Louise telephoned the petitioner in Chicago and told him she needed some money for the hospital. The petitioner wired her $75, $50 of which she paid on the hospital bill of $119.05 and $25 of which she paid on the funeral bill of $235. The total amount paid to the funeral home was $50, which amount was apparently furnished or paid by the petitioner. As of October 10, 1959, the balance due to the hospital was $69.05 and the balance due to the funeral home was $185, as shown by statements of account addressed to Louise. In his Federal income tax return for the year 1957 petitioner claimed itemized deductions as follows: Contributions
Catholic church & school
$ 100.00
Taxes
Cigarette tax 2 packs per day
at 5 per pack
52.00 [53.00]
Medical
Cost of medicines &
drugs
Other medical & den-
tal expense
$274.50
Total
$274.50
Enter 3% of line 11,
p. 1
250.35
Allowable amount
24.15
Other Deductions
Hard toe shoes, Carhart over-
alls, special gloves, tools
200.00
Transportation-construction
electrician worked in 4
cities
780.00
Union dues
253.90
Total Deductions
$1,410.05
*256 On the said return petitioner also claimed dependency exemptions for: Mamie Edge, "John-son (died 3 days after birth)," and "Mary Sherry-daughter." During the year 1957 petitioner's principal place of employment was the area around Chicago, Illinois, for an indefinite period of time. Opinion The first issue presented pertains to the deductibility of certain amounts allegedly incurred by petitioner in the Chicago area during 1957 as away-from-home traveling expenses within the meaning of sections 62(2)(B)[1] and 162(a)(2), [2] Internal Revenue Code of 1954. *257 Neither party introduced any specific evidence as to the relative geographical locations of petitioner's various places of employment and residence during the years 1956 through 1958. However, from the entire record, and the geographical location of such places, of which we take judicial notice, it appears that they are all, with the exception of Cloverport, Kentucky, where petitioner worked in March and April 1958, in Chicago proper or the vicinity thereof. More specifically, during 1957, the taxable year here in issue, such places were generally on the western or northwestern side of Chicago, within a radius of approximately 20 miles of Cicero, the home office of petitioner's employer. Petitioner's employment locations being thus localized, our holding in the case of Floyd Garlock, 34 T.C. 611, is controlling here. In that case the taxpayer, a heavy-duty equipment mechanic who maintained a domicile and residence in Mohawk, New York, and was affiliated with a union local in Binghamton, New York, was employed at various construction project sites for the same employer from November 1950 until some time in 1954 in the vicinity of Passaic, New Jersey. The taxpayer there *258 presented essentially the same argument that the instant petitioner makes, to wit: that the work performed on each construction project constituted a separate and distinct temporary job. We held that the taxpayer's principal place of employment was the area around Passaic for an indefinite period of time and expenses for meals and lodging there incurred were not deductible as "away from home" traveling expenses. In arriving at this conclusion, we stated that "a mere geographical relocation from one construction site to another does not of itself automatically give rise to a new, separate and distinct job," especially where all the relocations were within a reasonably confined area and for the same employer and that "The substantial and actual duration of petitioner's employment * * * indicates its indefiniteness." In the instant case petitioner's allegedly separate and temporary jobs constituted a single job for the same employer, the substantial and actual duration of which indicates its indefiniteness. The area in and around Chicago, Illinois, was petitioner's principal place of employment during 1957 for a substantial, indefinite and indeterminate period of time. Accordingly, *259 petitioner's expenses for meals and lodging there incurred are not deductible as "away from home" traveling expenses under sections 162(a)(2) and 62(2)(B). Similarly, travel expenses incurred in the Chicago area by petitioner in 1957 are not deductible as "away from home" traveling expenses. They constitute nothing more than commuting expenses which are not allowable as deductions. Frank H. Sullivan, 1 B.T.A. 93. The second issue is whether petitioner is entitled to dependency exemptions under sections 151 [3] and 152 [4] for his mother and two minors, allegedly his illegitimate children by Louise Teasley. *260 The statutory prerequisite for a dependency exemption is that the claimant provide over half of the support of the claimed dependent. Section 152. Petitioner has the burden of proving not only the amount of support he provided, but also the total support from all sources. See Bernard C. Rivers, 33 T.C. 935, where we stated: "The burden is upon him [petitioner] to establish clearly his right to the dependency exemptions. * * * The right to the exemption is contingent upon the total amount of expenditure for the support * * *. Cohan [Cohan v. Commissioner, 39 F. 2d 540] does not authorize or require a conjecture by this Court as to that total amount." The evidence presented in this respect is unsatisfactory. Petitioner has not attempted to summarize either his alleged support or the total support provided for any of the three parties claimed as dependents. With respect to his mother petitioner testified that he gave her $20 per week for her support. Even if we accept the amount and the regularity of these payments, as to which there is no credible corroboration, petitioner still would not have established that he provided over half of her support in *261 1957. The record indicates that the amounts which he contributed were not solely for the support of his mother. They were, at least in part, utilized by both his parents for the payment of rent on the home in which they lived. While the amount of his mother's social security benefits is established in the approximate amount of $41 to $42 per month, the father also received social security benefits, the amount of which is not in evidence. Since neither the amount provided by the petitioner, nor the total amounts used by the parents for their support, either individually or collectively, has been established, the petitioner has failed to carry his burden of proving that he contributed more than half of his mother's support. The claimed dependency exemptions for Thomas Allen Teasley and Mary Sherry Elaine Teasley, allegedly petitioner's illegitimate children, must also be denied. While petitioner made some payments during 1957 to Louise for the support of Mary Sherry, there is no indication of the total amount which he provided or of the total support of Mary Sherry. Accordingly, petitioner has failed to meet his burden of proving that he provided over half of Mary Sherry's support *262 and the claimed dependency exemption for her must be denied. The third dependency exemption claimed was for Thomas Allen (John) Teasley, who was born June 4, 1957, and died two days thereafter. Petitioner apparently paid $50 of Thomas Allen's funeral expenses. On reply brief petitioner concedes that the funeral expenses were not incurred for the support of Thomas Allen. He also paid $50, or less than one-half of the total $119.05 hospital bill incurred by Louise in giving birth to Thomas Allen. We are unable, on the record presented, to determine what if any portion of the total hospital bill or of petitioner's payment represented support of the child, rather than medical expenses of Louise. Petitioner wired the money to Louise in response to her telephoned request before the child was born, that she needed money for the hospital. In view of the foregoing and the fact that petitioner paid less than one-half of the total bill, we hold that petitioner has failed to establish that he provided over one-half of the support of Thomas Allen and accordingly he is not entitled to a dependency exemption for such child. Decision will be entered for the respondent. Footnotes
1. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * *
(2) Trade and business deductions of employees. - * * *
(B) Expenses for travel away from home. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. * * *↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business. * * *↩
3. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * *
(e) Additional Exemption for Dependents. - (1) In general. - An exemption of $600 for each dependent (as defined in section 152) - (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. * * *
(3) Child defined. - For purposes of paragraph (1)(B), the term "child" means an individual who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer. * * *↩
4. SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer): (1) A son or daughter of the taxpayer, or a descendant of either, * * *
(4) The father or mother of the taxpayer, or an ancestor of either, * * *↩