QUINTO DePAOLI, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTATE OF QUINTO DePAOLI, DECEASED, SOILA DePAOLI AND RACHEL CRAIG, PERSONAL REPRESENTATIVES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
DePaoli v. Commissioner
Docket Nos. 4472-92, 4474-92
United States Tax Court
T.C. Memo 1993-577; 1993 Tax Ct. Memo LEXIS 588; 66 T.C.M. (CCH) 1493; December 7, 1993, Filed *588 Decision will be entered under Rule 155. For petitioners: Towner Leeper. For respondent: Pamelya P. Herndon. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal estate and gift tax as follows: Addition to Tax
Docket No.
Year
Deficiency
Sec. 6651(a)(1)
4472-92
1988
$ 1,997,007
$ 499,252
Addition to Tax
Docket No.
Date of Death
Deficiency
Sec. 6651(a)(1)
4474-92
Nov. 3, 1987
$ 2,243,510
$ 560,878
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue and in effect at the date of death, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by the parties, the issues remaining for decision are: (1) Whether Quinto DePaoli, Jr. (petitioner), made a qualified disclaimer under section 2518 that entitled the estate of Quinto DePaoli (decedent) to a marital deduction; (2) whether the agreement between Soila DePaoli (Mrs. DePaoli) and petitioner is a settlement of a will contest that entitled the estate to a marital *589 deduction; (3) whether the agreement between Mrs. DePaoli and petitioner that altered the distribution of decedent's estate created a taxable gift from petitioner to Mrs. DePaoli; and (4) whether petitioner is liable for an addition to tax under section 6651(a)(1). FINDINGS OF FACT Most of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time of the filing of the petitions, petitioners resided in New Mexico. Decedent, a resident of Lordsburg, New Mexico, died on November 3, 1987. Decedent was survived by his wife, Mrs. DePaoli, and his only child, petitioner. Petitioner was unmarried and had two sons, Thomas DePaoli (Thomas) and Christopher DePaoli (Christopher). Petitioner is listed as the father of Thomas and Christopher on their birth certificates. The mother of Thomas and Christopher is Gloria J. Contreras (Contreras). Petitioner claimed Thomas and Christopher as dependent "sons" living with him for 12 months of each year on his 1987 through 1990 income tax returns. Petitioner also claimed a dependency exemption for Contreras on his 1987 and 1990 income tax returns, identifying her as his "girlfriend" *590 and "family member" living with him for 12 months of each year. Petitioner has not been declared the children's father in a legal proceeding. Decedent's will, executed on January 25, 1975, bequeathed all of the property he owned at death to petitioner and appointed Mrs. DePaoli as executrix. The will was drafted by I.M. Smalley (Smalley), attorney at law. On December 14, 1987, Smalley, on behalf of Mrs. DePaoli, filed a petition for probate. Smalley submitted an affidavit attesting to decedent's signature on the will. Petitioner submitted a Consent to Appointment of Co-Personal Representative, stating: I, Quinto Thomas DePaoli, Jr., only child of the deceased, and sole devisee of the Will being offered for probate, hereby give my consent to the appointment of Rachel Craig as co-personal representative of the estate of my late father, Quinto Thomas DePaoli. I believe her knowledge of the assets of my father's estate and her background as a Certified Public Accountant will be invaluable to the quick and efficient administration of my father's estate.
The will was formally probated on December 30, 1987, by the District Court of Hidalgo County, New Mexico. In the Order *591 for Formal Probate, the District Court formally appointed Mrs. DePaoli and Rachel Craig (Craig) as co-personal representatives of decedent's estate. On July 21, 1988, 2 weeks before the estate tax return was due, Mrs. DePaoli, Craig, and petitioner, represented by Smalley, filed a Motion for Relief from Judgment or Order in the District Court of Hidalgo County, requesting that the probate of decedent's will be set aside. The motion alleged that decedent, prior to his death, had consulted lawyers and accountants for estate planning purposes and had intended to change his will to leave the bulk of his estate to his wife in order to reduce the estate tax liability. The motion further alleged that decedent had destroyed his will, intending to execute a new one, and that the will probated by the District Court was actually a copy of decedent's will that decedent thought had been destroyed. The motion asserted that a legitimate dispute existed between Mrs. DePaoli and petitioner. However, in the motion, Mrs. DePaoli and petitioner proposed to settle the alleged dispute by agreeing that the will that was probated by the District Court was not valid, and they requested the court to distribute *592 the estate according to decedent's intentions. The motion alleged that decedent's intentions were that: (1) DePAOLI, JR. was to receive an amount equal to the greatest amount that DePAOLI, JR. could receive without any tax liability. (2) SOILA DePAOLI, after distribution is made pursuant to the preceding paragraph (1), is to receive the remainder of the estate.
Petitioner stated in the motion that it was his decision to receive only the amount that could be distributed without tax liability to decedent's estate, even though he had a right to a substantially higher distribution from the estate. On July 27, 1988, the District Court declared that decedent's will was null and void and that the estate would be distributed to Mrs. DePaoli and petitioner as requested in their motion for relief. Decedent's estate tax return, filed on February 7, 1989, indicated that Mrs. DePaoli received the entire estate, less a $ 600,000 bequest made to petitioner pursuant to a "court-ordered agreement". The bequest to Mrs. DePaoli was classified as a Schedule M, deductible bequest to a surviving spouse, resulting in a taxable estate of $ 600,000. On Schedule M, the preparers of the estate *593 tax return answered "no" to the question of whether any property passed to the surviving spouse as a result of a section 2518(b) qualified disclaimer. Also, no written disclaimer was attached to the estate tax return. The return indicated that no estate tax was due because the gross estate tax on $ 600,000 was within the unified credit available to decedent. In the notice of deficiency for the estate, respondent disallowed the marital deduction claimed on Schedule M because decedent's will, as probated, bequeathed all of his property to petitioner and because the agreement between Mrs. DePaoli and petitioner did not represent the rights of the parties under New Mexico law. Additionally, respondent sent a notice of deficiency to petitioner, determining that his transfer of an interest in decedent's estate to Mrs. DePaoli created a taxable transfer for gift tax purposes. Respondent also determined in this notice of deficiency that petitioner was liable for a section 6651(a)(1) addition to tax for his failure to file a timely gift tax return. OPINION Section 2056(a) allows a marital deduction from a decedent's gross estate for the value of property interests passing from the decedent *594 to a surviving spouse. In this instance, no interest passed to Mrs. DePaoli, the surviving spouse, through an express provision in decedent's will. However, petitioners contend that the estate is entitled to the marital deduction because property passed to Mrs. DePaoli as a result of a qualified disclaimer and a settlement of a will contest. Qualified Disclaimer
Section 20.2056(d)-1(b), Estate Tax Regs., provides that, when property passes from a decedent to a person other than the surviving spouse, and that person makes a qualified disclaimer that results in the surviving spouse being entitled to such property, the disclaimed interest is treated as passing directly from the decedent to the surviving spouse. Petitioners contend that the agreement between Mrs. DePaoli and petitioner, as formulated in their motion and in the District Court's order, constituted a qualified disclaimer by petitioner of his interest in decedent's estate. Specifically, petitioners contend that the formula in the agreement providing for petitioner to receive the amount that could be distributed without tax liability, instead of the entire estate, is a disclaimer of a pecuniary amount, which is *595 sanctioned in section 25.2518-3(c), Gift Tax Regs. Petitioners further contend that, as a result of petitioner's qualified disclaimer, Mrs. DePaoli, the surviving spouse, became entitled to such property under New Mexico law. Petitioners argue that the estate is thus entitled to a marital deduction with respect to this property deemed passing directly from decedent to Mrs. DePaoli under section 20.2056(d)-1(b), Estate Tax Regs. Preliminarily, we doubt from the facts in the record that petitioner intended to make a qualified disclaimer of property to which he was entitled under decedent's will. The estate tax return denied that any property passed to the surviving spouse as a result of a section 2518(b) qualified disclaimer and did not comply with instructions to be followed if a disclaimer has been made. Petitioners' disclaimer argument is patently an afterthought with weak factual support. We believe that compliance with the disclaimer statute requires clearer evidence of unequivocal conduct. Cf. Estate of Higgins v. Commissioner, 91 T.C. 61, 70-72 (1988), affd. 897 F.2d 856 (6th Cir. 1990). Section 2518(b) defines *596 a "qualified disclaimer" as follows: the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if -- (1) such refusal is in writing, (2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of -- (A) the day on which the transfer creating the interest in such person is made, or (B) the day on which such person attains age 21, (3) such person has not accepted the interest or any of its benefits, and (4) as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer and passes either -- (A) to the spouse of the decedent, or (B) to a person other than the person making the disclaimer. [Emphasis added.]
Respondent argues that the purported disclaimer is not "irrevocable and unqualified" based on the history of this case, inasmuch as petitioner and Mrs. DePaoli may decide again to rearrange the distribution of decedent's estate based on their perception of the tax consequences. *597 Respondent argues that such rearrangement is not unlikely, particularly because none of the assets had been distributed through the time of trial, over 5 years after the date of death. Respondent also argues that the agreement filed in the probate court as part of the motion was not the writing contemplated by section 2518(b)(1). Respondent's arguments in this regard, although appealing, are not supported by any compelling authority. Respondent does not argue that petitioner accepted the interest or any of its benefits in violation of section 2518(b)(3). Instead, respondent argues that the agreement between petitioner and Mrs. DePaoli fails to satisfy section 2518(b)(4). The requirement in section 2518(b)(4) that the disclaimed interest pass, without direction from the disclaimant, to either the surviving spouse or to a person other than the disclaimant effectively demands that the disclaimer result in a valid passing of the interest to such person by operation of State law. Estate of Bennett v. Commissioner, 100 T.C. 42, 67, 72-73 (1993). A disclaimer that is ineffective under State law will violate the "without direction" requirement because *598 Federal law does not prescribe rules for the passing of disclaimed property interests and, therefore, disclaimed property passing in a manner not dictated by State law would necessarily have to pass by direction of the disclaimant. Id. at 73. Thus, our inquiry with respect to the qualified disclaimer issue is focused upon the treatment of petitioner's renunciation under New Mexico law. New Mexico law authorizes an heir or devisee to renounce, in whole or in part, the succession to any property or interest by filing a written instrument, signed by the person renouncing, that describes the interest renounced and declares the renunciation and the extent thereof. N.M. Stat. Ann. sec. 45-2-801 (Michie 1989 Repl.). That statute further provides that, unless the decedent has indicated otherwise in his will, an interest renounced "passes as if the person renouncing had predeceased the decedent". N.M. Stat. Ann. sec. 45-2-801(C) (Michie 1989 Repl.). Additionally, New Mexico has an antilapse statute providing that, if a devisee who is related to the testator by kinship is treated as if he predeceased the testator, as is the case here, the issue of the deceased *599 devisee who survive the testator by 120 hours take in place of the deceased devisee. N.M. Stat. Ann. sec. 45-2-605 (Michie 1989 Repl.). Respondent does not expressly challenge petitioners' procedural compliance with the disclaimer statute of New Mexico. Instead, respondent contends that New Mexico law would not provide for the distribution of the disclaimed property to Mrs. DePaoli as dictated in the agreement. Respondent argues that, under the antilapse statute of New Mexico, the disclaimed property would pass to Thomas and Christopher, as decendent's surviving issue. Thus, respondent argues that the agreement providing for the distribution of all of decedent's property, less the amount retained tax-free by petitioner, to Mrs. DePaoli passes property to her by direction of petitioner and not by operation of State law. Petitioners contend that Thomas and Christopher are not issue who would inherit from petitioner because they were born out of wedlock. Petitioners also contend that petitioner's disclaimer effectively precluded inheritance by those who would take in his place. Petitioners argue that the disclaimer causes the renounced property to pass by intestacy because the *600 beneficiary, petitioner, is treated as predeceasing decedent under N.M. Stat. Ann. sec. 45-2-801(C) (Michie 1989 Repl.). Under the New Mexico intestacy statute, N.M. Stat. Ann. sec. 45-2-102 (Michie 1989 Repl.), petitioners therefore contend that Mrs. DePaoli, the surviving spouse, would be entitled to the disclaimed property, irrespective of the language in the agreement. Petitioners assert that the language in the agreement providing for Mrs. DePaoli to receive all of decedent's property, less the amount retained tax-free by petitioner, was precatory language that, under section 25.2518-2(e)(4), Gift Tax Regs., is not considered as directing the redistribution of property when applicable State law gives the language no effect. We disagree with petitioners' contention. We hold that Thomas and Christopher are issue of petitioner and of decedent for inheritance purposes under the law of New Mexico. The New Mexico probate code defines "issue" as "all of a person's lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in the Probate Code." N.M. Stat. Ann. sec. 45-1-201(20) *601 (Michie 1989 Repl.). The probate code defines "child" as "any individual entitled to take as a child under the Probate Code by intestate succession from the parent whose relationship is involved". N.M. Stat. Ann. sec. 45-1-201(3) (Michie 1989 Repl.). N.M. Stat. Ann. sec. 45-2-109(B)(2) (Michie 1989 Repl.) provides that, for purposes of intestate succession, a person born out of wedlock is a child of the father if "the reputed father has recognized the child in writing by an instrument signed by him, which shows upon its face that it was so signed with the intent of recognizing the child as an heir." The parties have not cited, and we have not found, any New Mexico case law interpreting this "written recognition" requirement. It came into effect in 1975 and was superseded on July 1, 1993, by the enactment of N.M. Stat. Ann. sec. 45-2-114 (Michie 1993 Repl.). The New Mexico Supreme Court has stated several principles of construction applicable to this situation: "the rule which holds that illegitimate children have no inheritable blood is a fiction of the common law, and has no application to the New Mexico statutes of descent and distribution, which are of civil law origin", *602 In re Gossett's Estate, 129 P.2d 56, 58 (N.M. 1942); statutes "in derogation of the common law * * * were remedial and should be liberally construed", id.; "strong proof" of recognition of an illegitimate child must be presented so as "to guard against the perpetration of fraud", In re Haskew's Estate, 245 P.2d 841, 842 (N.M. 1952) (quoting Watson v. Richardson, 110 Iowa 673, 80 N.W. 407, 414 (1899)). Petitioner testified that he has not acknowledged in writing his intent to recognize Thomas and Christopher as heirs. He has not denied that they are his children. Petitioner admitted that he claimed dependency exemptions for his "sons", Thomas and Christopher, on his income tax returns. To be entitled to a section 151 personal exemption for a dependent, the taxpayer must demonstrate, among other things, that the dependent is one of the following, in accordance with section 152(a): (1) A son or daughter of the taxpayer, or a descendant of either, * * * (9) An individual * * * who, for the taxable year of the taxpayer, has as his principal place of abode the home of *603 the taxpayer and is a member of the taxpayer's household.
On his 1987 through 1990 income tax returns, petitioner claimed dependency deductions for Thomas and Christopher and identified them as "sons" who lived with him 12 months of the year. If petitioner did not intend to recognize Thomas and Christopher as his children, he could have claimed dependency deductions for them under section 152(a)(9). Apparently, petitioner was aware of this possibility because, on his 1987 and 1990 income tax returns, he claimed dependency deductions for Contreras, presumably under section 152(a)(9), having identified her as a "girlfriend" and "family member" living with him for 12 months of the year. Because petitioner chose to identify Thomas and Christopher specifically as his "sons", instead of as just members of his household, we are persuaded that these returns, signed by petitioner under penalties of perjury, constitute a written instrument signed with the intent of recognizing the children as heirs. Petitioner has not proven that he had any contrary intention, which is his burden in these tax cases. There is "strong proof" that petitioner is the children's father, so that a fraud is *604 not being perpetrated on anyone. We hold that petitioner's listing of Thomas and Christopher as "sons" on his income tax returns satisfies the "written recognition" criterion of N.M. Stat. Ann. sec. 45-2-109 (Michie 1989 Repl.) and, thus, that the children are issue of petitioner and thus of decedent for inheritance tax purposes. Further, we hold that the disclaimed property would pass to them under the antilapse statute. As a result, we hold that the agreement does not constitute a qualified disclaimer by petitioner because it violates section 2518(b)(4) by directing a disposition of the disclaimed property to Mrs. DePaoli. Will Contest
Interests that pass to the surviving spouse as the result of a will contest are subject to special rules set forth in section 20.2056(e)-2(d), Estate Tax Regs. Subparagraph (2) of that section pertains to situations where property is transferred to the surviving spouse in settlement of her claims against the estate. Section 20.2056(e)-2(d)(2), Estate Tax Regs., provides: (2) If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered *605 to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse. [Emphasis added.]
The alleged will controversy here stems from petitioners' assertion that decedent intended to distribute his property in a manner different from that declared in his will. Petitioners contend that the agreement between Mrs. DePaoli and petitioner, which was approved by the District Court of Hidalgo *606 County, settled this dispute by providing for a distribution that conformed with decedent's wishes. Petitioners thus argue that the property passing to Mrs. DePaoli pursuant to the agreement entitles the estate to the marital deduction under section 20.2056(e)-2(d)(2), Estate Tax Regs. Respondent, however, contends that petitioners have failed to demonstrate that petitioner's surrender of his interest in decedent's estate was a bona fide recognition of Mrs. DePaoli's enforceable rights in decedent's estate as required by section 20.2056(e)-2(d)(2), Estate Tax Regs. We agree. In Commissioner v. Estate of Bosch, 387 U.S. 456 (1967), the Supreme Court held that the decisions of State trial courts as to issues of underlying State law are not binding on Federal courts adjudicating Federal estate tax issues. "[I]f the decision of a State trial court on a matter of State law is not binding for estate tax purposes, a good faith settlement of such an issue cannot be either." Estate of Hubert v. Commissioner, 101 T.C.    ,     (1993) (slip op. at 9). (A fortiori a settlement that is not based on good faith has no effect.) Therefore, the distribution *607 of decedent's estate as provided for in the agreement between Mrs. DePaoli and petitioner is not binding on this Court in determining the estate tax consequences, even though it was approved by the District Court of Hidalgo County. We must look beyond the agreement and independently determine whether Mrs. DePaoli had enforceable rights in decedent's estate under the law of New Mexico. Estate of Brandon v. Commissioner, 828 F.2d 493, 499 (8th Cir. 1987), revg. and remanding 86 T.C. 327 (1986); Estate of Hubert v. Commissioner, supra at     (slip op. at 9). Petitioners have not expressly set forth any grounds upon which Mrs. DePaoli could claim an interest in decedent's property. They seem to argue that decedent's will was null and void because it did not conform with his intent and, thus, that Mrs. DePaoli, as the surviving spouse, had rights in decedent's estate under the law of intestate succession of New Mexico. Notwithstanding the findings of the State court in the uncontested probate matter, there is a total absence of credible evidence in this case supporting petitioners' claim that decedent intended to *608 change his will to make Mrs. DePaoli his heir to all assets over $ 600,000. Although petitioners argue that decedent and his heirs thought all prior wills had been destroyed, they presented no evidence in support of that contention. Neither Mrs. DePaoli nor any of the attorneys and accountants allegedly involved in the program to make the change testified about decedent's intent. Petitioner merely gave his unsupported conclusion, in response to a leading question, that the State court order was entered because "It was my father's intentions." Petitioner gave no details, and there is no indication that he was present at any of the discussions that his father had with lawyers and accountants. Moreover, we do not believe that filing the original will can be fairly characterized as "inadvertent", in view of the representations made by petitioner, Mrs. DePaoli, and counsel who drafted the will at the time the will was offered for probate. Petitioners have failed to satisfy their burden of proof as to the factual matters upon which they rely. In any event, we are not persuaded that, under the law of New Mexico, decedent's intention to make a new will operates as a revocation of decedent's *609 old will and thus causes decedent's estate to pass by intestate succession. The Supreme Court of New Mexico has stated that "mere intention alone, no matter how unequivocable, is not sufficient to effect the revocation of such a solemn instrument." Perschbacher v. Moseley, 403 P.2d 693, 695 (N.M. 1965). None of the acts required for revocation under N.M. Stat. Ann. sec. 45-2-507 (Michie 1989 Repl.), including execution of a subsequent will and burning, tearing, or obliterating decedent's will, were proven. Petitioners have neither alleged nor proved any grounds upon which the terms of decedent's will could have been challenged, such as incompetence or undue influence. Petitioners thus have not shown any invalidity of the will. Petitioners have not alleged that Mrs. DePaoli had any other statutory rights in decedent's estate as the surviving spouse. Thus, we need not address the issue of whether a will contest involving a spouse's statutory rights constitutes a "controversy involving the decedent's will" that is covered under the will contest regulation. The Court of Appeals for the Tenth Circuit has declined to read the will contest regulation *610 broadly and, in discussing section 20.2056(e)-2(d)(1), Estate Tax Regs., has said that "we believe the will-contest regulation is inapplicable to property passing to a surviving spouse by statutory election or under the law of survivorship because the regulation speaks only in terms of a controversy involving a bequest or devise under decedent's will." Schroeder v. United States, 924 F.2d 1547, 1554 (10th Cir. 1991). Thus, we reject petitioners' contention that Mrs. DePaoli had enforceable rights in decedent's estate under the law of intestate succession, and petitioners have not presented any other grounds upon which Mrs. DePaoli could have obtained enforceable rights in decedent's estate. We conclude that petitioner's surrender of his interest in decedent's estate was not made in a bona fide recognition of Mrs. DePaoli's enforceable rights in decedent's estate but was a belated attempt to minimize or postpone estate taxes. The property passing to Mrs. DePaoli pursuant to the agreement does not entitle the estate to the marital deduction under section 20.2056(e)-2(d)(2), Estate Tax Regs. Gift Tax
Section 2501(a)(1)imposes a tax on the transfer *611 of property by gift. A gift is defined in section 2512(b) as any transfer to the extent that the value of the property transferred exceeds the value of the property received. Respondent contends that, when petitioner transferred part of his interest in decedent's estate to Mrs. DePaoli and did not receive consideration in exchange, petitioner made a taxable gift of property to Mrs. DePaoli. Under the terms of decedent's will, petitioner was entitled to receive all of decedent's property. However, petitioner assigned all of his rights in decedent's property, except the portion that he could receive without causing estate tax liability, to Mrs. DePaoli. Petitioners contend that Mrs. DePaoli received decedent's property as a result of a qualified disclaimer made by petitioner and, as a result, petitioner is not treated as making a gift under section 25.2518-1(b), Gift Tax Regs. For reasons discussed above, we have held that petitioner did not make a qualified disclaimer because the property passed to Mrs. DePaoli by his direction. In addition, because we have found no theory upon which Mrs. DePaoli had a cognizable interest in decedent's estate, there was either no consideration *612 or inadequate consideration for petitioner's agreement. Petitioners further contend that, because there has been no transfer of property from the estate to Mrs. DePaoli, the gift has not been completed. This argument is misplaced. Section 25.2511-2(a), Gift Tax Regs., provides that "The gift tax is not imposed upon the receipt of the property by the donee * * *. On the contrary, the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer". Section 25.2511-2(b), Gift Tax Regs., provides that the gift is complete when the donor has parted with dominion and control of the property. Thus, the focus here is not on when Mrs. DePaoli actually receives property from the estate but on whether the donor, petitioner, undertook "his act of making the transfer" and relinquished dominion and control over his rights in decedent's estate. Petitioner has contended in arguing disclaimer that he transferred a portion of his rights in decedent's estate to Mrs. DePaoli and retained no control over these rights. Thus he made a taxable gift at the time of the agreement. Contrary to petitioners' assertion, there is no inconsistency between recognizing *613 the agreement as valid between the parties but ineffective to avoid estate tax. Section 6651(a)(1)
Section 6651(a)(1)imposes an addition to tax for the failure to file a return as required by section 6019 (gift tax returns), "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". Respondent contends that petitioner is liable for this addition to tax because he failed to file a gift tax return that reflected the gift he made to Mrs. DePaoli. Petitioner contends that he is not liable for the addition to tax because his failure to file a gift tax return was based on "an error in law" that no gift was made and that such an error constitutes reasonable cause. Petitioner has not asserted that he relied on the advice of an attorney or an accountant in determining that a gift tax return was not necessary. See United States v. Boyle, 469 U.S. 241, 245-253 (1985). He has failed to prove that his failure to file a gift tax return was due to reasonable cause. Decisions will be entered under Rule 155.