Quinto DePAOLI, Jr., Estate of Quinto DePaoli, Deceased, Soila DePaoli and Rachel Craig, Personal Representatives, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 94–9015.

United States Court of Appeals, Tenth Circuit.

July 31, 1995.

---

Towner Leeper, El Paso, TX, for petitioners-appellants.

William J. Patton (Loretta C. Argrett and Richard Farber with him, on the brief) of the U.S. Dept. of Justice, Tax Div., Washington DC, for respondent-appellee.

Before EBEL, Circuit Judge,
McWILLIAMS, Senior Circuit Judge, and
JENKINS, Senior District Judge.*

JENKINS, Senior District Judge.

This case arises out of the taxpayers' efforts to escape estate taxes by disclaiming a testamentary transfer of property. The Tax Court held the purported disclaimer invalid for estate tax purposes, subjecting the tax-

payers to liability not only for estate taxes but also for a gift tax and an addition to tax under section 6651(a)(1) of the Internal Revenue Code. *See* 66 T.C.M. (CCH) 1493, 1993 WL 500190 (1993). The taxpayers appeal. We have jurisdiction under I.R.C. § 7482(a)(1) and reverse.

## I. BACKGROUND

Quinto DePaoli, Sr., a resident of New Mexico, died in 1987. He was survived by his wife, Soila DePaoli, and his only son, Quinto DePaoli, Jr. Quinto Senior's will left his entire estate to Quinto Junior. The will was formally probated on December 30, 1987. On July 21, 1988, shortly before the estate tax return was due, Soila and Quinto Junior moved to have the probated will set aside. They claimed that the original will had been destroyed, that the will admitted to probate was actually a duplicate copy and that Quinto Senior had intended to make a new will leaving Quinto Junior the greatest amount he could receive without any tax liability (namely, $600,000) and leaving the bulk of the estate to Soila but that he had died before he could execute the new will. Quinto Junior acknowledged that he could claim a substantial part of the estate but agreed to receive only $600,000 to settle the will contest. The probate court granted the motion and ordered the estate distributed accordingly.

The federal estate tax return filed for Quinto Senior's estate indicated that the entire estate passed to Soila, less certain expenses and a $600,000 bequest to Quinto Junior. The bequest to Soila was classified as a deductible bequest to a surviving spouse. The return indicated that no property passed to the surviving spouse as a result of a qualified disclaimer under I.R.C. § 2518(b), and no written disclaimer was attached to the return. The return indicated that no tax was due, since the tax on the $600,000 taxable estate was within the unified credit available to the estate.

The Commissioner denied the entire marital deduction on the grounds that Quinto Senior's will, as probated, bequeathed all his

---

* The Honorable Bruce S. Jenkins, Senior District Judge, United States District Court for the District of Utah, sitting by designation.

property to his son and the agreement between Quinto Junior and Soila was invalid. The Commissioner also determined that the agreement between Quinto Junior and Soila constituted a taxable gift for gift tax purposes and assessed an addition to tax against Quinto Junior under I.R.C. § 6651(a)(1) for failing to file a gift tax return.[1]

The Tax Court upheld the Commissioner's determinations. The court held that Quinto Junior's agreement to forego all but $600,000 of his father's estate did not entitle the estate to the marital deduction because the portion of the estate passing to Soila passed to her from Quinto Junior and not from Quinto Senior. The court further held that the property passing to Soila constituted a taxable gift from Quinto Junior, making Quinto Junior liable for the federal gift tax. Finally, the court held that Quinto Junior's failure to file a gift tax return was not "due to reasonable cause" and that Quinto Junior was therefore liable for an addition to tax under I.R.C. § 6651(a)(1). The Tax Court concluded that the deficiency in estate tax due was $1,633,250, the deficiency in gift tax due was $1,297,750 and the addition to tax was $324,438. Quinto Junior, the estate, and Quinto Senior's personal representatives (Soila and Rachel Craig) appealed.

## II. DISCUSSION

■ The appellants claim that the Tax Court erred by denying the estate a marital deduction. They claim that, as a result of Quinto Junior's disclaimer of his property

1. Section 6651(a)(1) imposes an addition to tax for failure to file a gift tax return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." I.R.C. § 6651(a)(1). The penalty ranges from 5 to 25 percent of the gift tax due, depending on how delinquent the taxpayer is. *Id.*

2. Before the Tax Court, the petitioners also argued that they had properly claimed the marital deduction under former section 20.2056(e)–2(d) of the estate tax regulations because the decedent's property had passed to Soila in settlement of a will contest. The Tax Court rejected this argument, and the petitioners have not challenged that ruling on appeal.

3. The Commissioner does not claim and the Tax Court did not hold that the disclaimer failed to meet the requirements for a valid disclaimer

rights under Quinto Senior's will, Quinto Senior's property passed to his surviving spouse (Soila) as a matter of law and was therefore properly deducted.[2] The parties agree that this issue is subject to de novo review.

Estate taxes are imposed on the value of a decedent's taxable estate. I.R.C. § 2001. In determining the value of the taxable estate, the value of property that passes to a surviving spouse is deducted. *Id.* § 2056(a). If property passes from a decedent to someone other than the surviving spouse and that person makes a "qualified" disclaimer that results in the surviving spouse being entitled to the property, the disclaimed interest is treated as passing directly from the decedent to the surviving spouse and therefore qualifies for the marital deduction. *See* Treas. Reg. § 20.2056(d)–1(b).

To qualify, a disclaimer must meet certain requirements, chief of which, for purposes of this appeal, is that, as a result of the disclaimer, the interest passes to the surviving spouse "without any direction on the part of the person making the disclaimer." I.R.C. § 2518(b)(4). The Tax Court held that Quinto Junior's agreement to forego all but $600,000 of his father's estate was not a qualified disclaimer because his interest would not have passed to Soila without his direction.[3]

■ The requirement that the disclaimed property pass without any direction from the person making the disclaimer means that the disclaimer must result in a valid passing of

under New Mexico law, contained in N.M.Stat. Ann. § 45–2–801 (Michie Repl.1989). The Tax Court doubted whether Quinto Junior intended to make a qualified disclaimer under federal law when he entered into the settlement agreement with Soila, since the estate tax return did not indicate that any property passed to Soila as a result of a qualified disclaimer. The court called the argument "patently an afterthought with weak factual support." *See* 66 T.C.M. (CCH) at 1495, 1993 WL 500190. However, the Commissioner concedes that the Tax Court did not reject the taxpayers' claim on that ground. It held only that the disclaimer was not a qualified disclaimer under I.R.C. § 2518(b)(4) because it directed that the disclaimed property pass to Soila. *See* Br. for Appellee at 22–23 n. 6. It is only that issue that we need address.

the disclaimed interest to the surviving spouse by operation of state law. Federal law does not prescribe rules for the passing of disclaimed property interests, so any disclaimed property passing other than by operation of state law must be at the direction of the disclaimant. *See Estate of Goree v. Commissioner,* 68 T.C.M. (CCH) 123, 125–26, 1994 WL 379246 (1994); *Estate of Bennett v. Commissioner,* 100 T.C. 42, 67, 72–73, 1993 WL 19583 (1993).

Under New Mexico law, unless the decedent indicates otherwise in his will, any disclaimed property passes as if the disclaimant had predeceased the decedent. *See* N.M.Stat.Ann. § 45–2–801(C) (Michie 1989 Repl.).[4] Under New Mexico's antilapse statute, if a devisee who is related to the testator by kinship is treated as if he had predeceased the testator, the devisee's "issue" who survive the testator by 120 hours "take in place of" the devisee. *Id.* § 45–2–605. Thus, if Quinto Junior had "issue," his disclaimer would not have caused the disclaimed property to pass to his stepmother, Soila, by operation of law and therefore would not have been a qualified disclaimer under I.R.C. § 2518(b) entitling the estate to the marital deduction.

■ Quinto Junior has never been married but has two illegitimate children—Thomas Derrick DePaoli and Christopher Noel Contreras DePaoli. Derrick was five years old at the time of Quinto Senior's death, and Christopher was four. The Tax Court concluded that the property Quinto Junior disclaimed would not have passed to Soila absent his agreement that Soila take the property but would have passed to Derrick and Christopher. The petitioners claim that Quinto Junior's illegitimate children were not his "issue" within the meaning of the antilapse statute and therefore would not have

taken in his place as a result of his disclaimer.

The New Mexico Probate Code in effect at the time of Quinto Senior's death and Quinto Junior's disclaimer defines "issue" as "all of a person's lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in the Probate Code." N.M.Stat.Ann. § 45–1–201(A)(21). The Probate Code defines "child" as "any individual entitled to take as a child under the Probate Code by intestate succession from the parent whose relationship is involved" and excludes stepchildren, foster children and grandchildren. *Id.* § 45–1–201(A)(3). For purposes of intestate succession, the Probate Code provides that a child born out of wedlock is considered a "child" of the father if, among other things, "the reputed father has recognized the child in writing by an instrument signed by him, which shows upon its face that it was so signed with the intent of recognizing the child as an heir." *Id.* § 45–2–109(B)(2).[5] The code makes declarations of deceased persons admissible to prove that such an instrument was lost or destroyed, as well as to prove the existence, contents and genuineness of such an instrument. The statute further provides, "Such declarations shall be corroborated by proof of general and notorious recognition of such child by the father." *Id.* § 45–2–109(B)(2). Finally, the code defines "heirs" as "those persons . . . who are entitled under the statutes of intestate succession to the property of a decedent." *Id.* § 45–1–201(A)(17). Under the statutes of intestate succession, the part of the intestate estate not passing to the surviving spouse passes "to the issue of the decedent." *Id.* § 45–2–103(A).

In other words, under New Mexico law as it existed in 1987 and 1988, an illegitimate

---

4. Article II of the Uniform Probate Code (dealing with intestate succession) and section 1–201 (the general definitional section) were revised in 1990. In accordance with this revision, New Mexico substantially revised its probate code in 1993. Unless otherwise indicated, citations to the New Mexico Probate Code, N.M.Stat.Ann. ch. 45, are to the code in effect at the time of the events giving rise to this action.

5. Under the Probate Code as it existed before 1993, an illegitimate child could also be considered a child of his natural father for purposes of intestate succession if the child's natural parents participated in a marriage ceremony or if paternity was established by an adjudication. *See* N.M.Stat.Ann. § 45–2–109(B)(1) & (3). Neither of those conditions has been met here.

child was considered "issue" of his natural father and therefore entitled to take in place of the natural father under the antilapse statute if the natural father recognized the child by a signed, written instrument that "shows upon its face" that the father signed it "with the intent of recognizing the child as an heir," *id.* § 45–2–109(B)(2), that is, as someone entitled to succeed to the father's property under the intestate succession statutes, *see id.* § 45–1–201(A)(17).

The Tax Court concluded that Quinto Junior had recognized his illegitimate children as his heirs when he filed his federal income tax returns for the years 1987 through 1990 listing each of them as his "son" and claiming dependency exemptions for them. The Internal Revenue Code defines "dependent" to include a "son or daughter of the taxpayer" and any other individual who "has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household" for the tax year. *See* I.R.C. § 152(a). The Tax Court reasoned that, if Quinto Junior had intended to take an exemption for his children without recognizing them as his heirs, he would have listed them simply as dependents or household members, as he did for the children's mother, Gloria Contreras.[6] The court concluded: "Because petitioner chose to identify Thomas and Christopher specifically as his 'sons,' instead of as just members of his household, we are persuaded that these returns, signed by petitioner under penalties of perjury, constitute a written instrument signed with the intent of recognizing the children as heirs." 66 T.C.M. (CCH) at 1497, 1993 WL 500190.[7]

The problem with the Tax Court's reasoning is that it equates "son" under the Internal Revenue Code with "heir" under the New Mexico Probate Code. The term "son" is ambiguous. *See Lalli v. Lalli*, 439 U.S. 259, 274 n. 11, 99 S.Ct. 518, 528 n. 11, 58 L.Ed.2d 503 (1978). It may refer to a natural child, an adopted child, a stepchild, a legitimate

child or an illegitimate child. The Internal Revenue Code's definition of a child is broader than the Probate Code's. For example, a stepchild can be a "child" within the meaning of the Internal Revenue Code and therefore a dependent for purposes of the dependency exemption but is not a "child" and therefore an heir for purposes of intestate succession. *Compare* I.R.C. § 151(c)(3) (formerly § 151(e)(3)) *with* N.M.Stat.Ann. § 45–1–201(A)(3).

Similarly, an illegitimate child may be a child (and hence a dependent) under the Internal Revenue Code without being a child (and hence an heir) under the Probate Code. A son or daughter need not be legitimate for the father to qualify for a dependency exemption under the Internal Revenue Code. *See Dillard v. Commissioner*, 47 T.C.M. (CCH) 919, 919–20, 1984 WL 15338 (1984); Rev.Rul. 54–498, 1954–2 C.B. 107. *Cf. Radin v. Commissioner*, 53 T.C.M. (CCH) 1339, 1341–42, 1987 WL 40400 (1987) (denying a dependency exemption for the taxpayer's illegitimate child, not because she was not his "daughter" within the meaning of section 152(a), but because the taxpayer failed to prove that he provided over half her support); *Edge v. Commissioner*, 20 T.C.M. (CCH) 421, 424–25, 1961 WL 393 (1961) (same). By listing Derrick and Christopher as his "sons" on his tax returns, Quinto Junior may have recognized them as his children but did not necessarily recognize them as his "heirs."

The Commissioner argues that New Mexico law recognizes no distinction between a child and an heir, that all New Mexico law requires is that the natural father recognize his illegitimate child as his child, since a child is entitled to inherit under New Mexico's intestacy statutes and thus is an "heir." However, not all children are entitled to inherit by intestate succession under New Mexico law. A child must satisfy the statutory definition of "child" to be considered "is-

---

6. Quinto Junior claimed an exemption for Ms. Contreras on his 1987 and 1990 income tax returns, identifying her as "Girlfriend" and "Fam[ily] Mem[ber]," respectively.

7. The Tax Court further held that Quinto Junior had not met his burden of proving that he had

any contrary intention. In fact, the only direct evidence on this issue was Quinto Junior's own testimony. He testified that he had never acknowledged in writing the intent to recognize a child as an heir. Tr. at 6.

sue" under the Probate Code. *Cf. Coleman v. Offutt (In re Estate of Coleman)*, 104 N.M. 192, 194, 718 P.2d 702, 704 (Ct.App.1986) (an adopted son who satisfies the statutory definition of "child" is also "issue" of his father). For present purposes, an illegitimate child is not entitled to succeed to his or her fathers' property by intestate succession unless the father (1) "has recognized the child in writing," (2) "by an instrument signed by him," (3) "which shows upon its face that it was so signed with the intent of recognizing the child as an heir." N.M.Stat.Ann. § 45–2–109(B)(2). At best, Quinto Junior's tax returns only satisfy the first two requirements. They do not show "upon [their] face" that they were signed "with the intent of recognizing" Derrick and Christopher as Quinto Junior's heirs. The only intent evident from the returns is the intent to claim a dependency exemption, which, the Commissioner concedes, a taxpayer can claim without intending to make the dependent an heir (as Quinto Junior did when he filed his 1987 and 1990 returns claiming an exemption for his mistress).

In construing section 45–2–109(B)(2), we are required to give effect to all its provisions and not to render any part of the statute surplusage. *See, e.g., Whitely v. New Mexico State Personnel Bd.*, 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993); *Roberts v. Southwest Community Health Servs.*, 114 N.M. 248, 251, 837 P.2d 442, 445 (1992). The Commissioner's argument, which equates "heir" with "child," would read the phrase "which shows upon its face that it was so signed with the intent of recognizing the child as an heir" out of the statute. It would be enough if the father of an illegitimate child "recognized the child in writing by an instrument signed by him." We believe that the next phrase—"which shows upon its face that it was so signed with the intent of recognizing the child as an heir"—requires something different from recognition of parentage, namely, an intent to recognize the child as an heir, that is, as someone entitled to inherit from the father by intestate succession. In other words, we believe that section 45–2–109(B)(2), properly construed, requires both recognition of paternity and evidence of an intent that the child inherit.

For that reason, this case is distinguishable from the cases the Commissioner relies on. In each of those cases state law required only proof of paternity; it did not require evidence of an intent to recognize the child as an heir. The relevant statute in each case provided that an illegitimate child is an heir of "the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father" of the child. *See In re Estate of Jerrido*, 339 So.2d 237, 239 (Fla.Dist.Ct.App.1976), *cert. denied*, 346 So.2d 1249 (Fla.1977); *Glick v. Knoll (In re Estate of Glick)*, 136 Mont. 176, 346 P.2d 987, 987 (1959); *Schalla v. Roberts (In re Estate of Schalla)*, 2 Wis.2d 38, 86 N.W.2d 5, 8 (1957). Moreover, in each of those cases, the court relied on governing case law to the effect that the form and purpose of the writing acknowledging paternity was immaterial. *See Jerrido*, 339 So.2d at 240 (relying on Florida case law holding that "the written acknowledgment of parenthood need not assume any particular formality") (citations omitted); *Glick*, 346 P.2d at 989 (relying on Montana case law holding that a writing acknowledging paternity "is a sufficient compliance with the statute without regard to the purpose for which the instrument was executed") (citation omitted); *Schalla*, 86 N.W.2d at 9 (under the relevant statute, the written acknowledgment did not have to be made for the express purpose of establishing heirship). By contrast, the New Mexico statute requires that the writing "show[ ] upon its face that it was . . . signed with the intent of recognizing the child as an heir." Where a statute prescribes the form a written acknowledgment must take, other courts have held that a tax return that identified the taxpayer's illegitimate child as his son or daughter did not constitute a sufficient written acknowledgment where the return did not strictly comply with all the requirements of the statute. *See, e.g., Smith v. Smith*, 40 Conn.Supp. 151, 483 A.2d 629, 630–31 (1984); *Distefano v. Commonwealth*, 201 Va. 23, 109 S.E.2d 497, 500–01 (1959).

The parties have not provided any legislative history for section 45–2–109(B)(2),[8] and we have not found any New Mexico cases directly on point. However, we believe our construction of the statute is consistent with New Mexico law. The New Mexico Supreme Court has recognized a distinction between paternity and heirship.[9] In *Gallup v. Bailey (In re Gossett's Estate)*, 46 N.M. 344, 129 P.2d 56 (1942), the court held that the so-called bastardy act, which required the putative father of an illegitimate child to support and maintain the child if the father had acknowledged paternity in writing, "has no application to the descent and distribution and inheritance of estates; in which case the writing must be made for the purpose of recognizing the child as an heir, but this is not so as to the Bastardy Act." 46 N.M. at 351–52, 129 P.2d at 61.

In *Haskew v. Haskew (In re Haskew's Estate)*, 56 N.M. 506, 245 P.2d 841 (1952), the court considered whether the putative father of an illegitimate child had sufficiently recognized the child so as to make the child his heir. The statute in effect at the time provided that, absent written recognition, the father must have recognized the child as his child and "such recognition must have been general and notorious." There was no written recognition in that case. The court held that there was sufficient evidence that the father had recognized the child as his own, but there was not sufficient evidence that the recognition was general and notorious. *See* 56 N.M. at 507, 245 P.2d at 841. Thus, the illegitimate child was not entitled to inherit from his father, even though paternity had been established.

Quinto Junior's tax returns do not show on their face that he intended his illegitimate children to be his heirs, that is, to inherit from him under New Mexico's intestate succession statutes. Consequently, they were not his "issue" within the meaning of the antilapse statute and would not have succeeded to any disclaimed property under section 45–2–605.[10] Therefore, when Quinto Junior disclaimed an interest in his father's estate, that interest passed to his stepmother, Soila, by operation of law, making the disclaimer a "qualified disclaimer" within the meaning of I.R.C. § 2518(b). Because the property passing to Soila, the surviving spouse, passed as a result of a qualified disclaimer, the estate properly claimed the marital deduction. Moreover, because the

8. The phrase "which shows upon its face that it was so signed with the intent of recognizing the child as an heir" is of obscure (though not illegitimate) parentage. The language dates back to at least 1915, *see* 1915 N.M.Laws ch. 69, § 1, and was carried over into subsequent revisions of the New Mexico Probate Code until the latest revision, in 1993. Although New Mexico borrowed its probate statutes from Kansas, which in turn adopted Iowa statutes, *see State v. Chavez*, 42 N.M. 569, 572–74, 82 P.2d 900, 903 (1938), the quoted language appears to be unique to New Mexico. The corresponding Iowa and Kansas statutes only required that the putative father recognize his illegitimate children as his children by "general and notorious" recognition "or else in writing." *See McKellar v. Harkins*, 183 Iowa 1030, 166 N.W. 1061, 1063 (1918) (quoting Iowa Code § 3385 (1897)); *Estate of McKay v. Davis*, 208 Kan. 282, 491 P.2d 932, 933 (1971) (quoting Kan.G.S. § 3845 (1915)). Under New Mexico law, proof of general and notorious recognition was required to corroborate a declaration of a deceased person regarding a written recognition, but alone it was not sufficient to make an illegitimate child an heir. *See* N.M.Stat.Ann. § 45–2–109(B)(2).

9. New Mexico is not alone in recognizing the distinction. *See, e.g., Wong v. Wong Hing Young,* 80 Cal.App.2d 391, 181 P.2d 741, 743 (1947) (an admission of paternity sufficient under the probate code was not sufficient to impose a support obligation on the putative father under the civil code); *In re Flemm*, 85 Misc.2d 855, 381 N.Y.S.2d 573, 577 (Sur.Ct.1975) (recognizing that under prior New York law an order of filiation establishing paternity entitled an illegitimate child to the support of the putative father but did not entitle the child to inherit from the putative father).

10. Our holding that Derrick and Christopher could not have inherited from their father at the time of Quinto Senior's death does not necessarily mean that the children will be denied an inheritance. The New Mexico Legislature repealed section 45–2–109 when it revised the Probate Code in 1993. The current statute provides that, for purposes of intestate succession, a person is "the child of his natural parents, regardless of their marital status," provided the natural parent "has openly treated the child as his and has not refused to support the child." N.M.Stat. Ann. § 45–2–114(A) & (C) (Michie Repl.1993). Quinto Junior's tax returns may well be evidence that he has "openly treated" the children as his and "not refused" to support them. However, that issue is not before us, and we express no opinion on it.

property is deemed to have passed directly from Quinto Senior to Soila, the disclaimer did not make Quinto Junior liable for the federal gift tax. Finally, because Quinto Junior was not required to file a gift tax return as a result of the disclaimer, he is not liable for the addition to tax under I.R.C. § 6651(a)(1) for failing to file a gift tax return.[11]

We recognize that the parties' settlement, which provided the basis for their disclaimer argument, may be nothing more than a blatant attempt to avoid paying estate taxes. However, neither the probate court nor the Tax Court found anything wrong with the disclaimer other than its purported direction that the estate pass to Soila. The validity of the disclaimer is not properly before us. We have concluded that the effect of the disclaimer under the unique New Mexico probate statutes in effect at the time was to cause the estate to pass to Soila regardless of any direction on the part of Quinto Junior, thus making the estate eligible for the marital deduction under federal law. There is nothing wrong with trying to escape tax liability if the law allows a taxpayer to do so. *See, e.g., Rothschild v. United States,* 407 F.2d 404, 413 (Ct.Cl.1969); *Prentis v. United States,* 273 F.Supp. 449, 457 (S.D.N.Y.1964), *aff'd in part, rev'd in part,* 364 F.2d 525 (2d Cir.1966). *Cf. Re Weston's Settlements,* [1968] 3 All E.R. 338, 342 (C.A.1968) (per Lord Denning) ("no-one has ever suggested that [tax avoidance] is undesirable or contrary to public policy"; but although the avoidance of tax "may be lawful, . . . it is not yet a virtue"). We believe in this case the law allowed the estate to claim the marital deduction. That does not mean that the petitioners can successfully escape taxation altogether. It simply means that the Commissioner may have to wait until Soila dies to collect taxes on the estate.

REVERSED.

---

**11.** Our conclusion that the Tax Court erred in holding that the disclaimer did not meet the requirement of I.R.C. § 2518(b)(4) that the property pass "without any direction on the part of the person making the disclaimer" makes it unnecessary to reach the other issues the petitioners raise.